STATE of Tennessee, Appellee,

v.

**Bobby ROBERSON, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Oct. 21, 1982.

Permission to Appeal Denied by Supreme Court Jan. 24, 1983.

Wayne S. Taylor, William J. Stricklin, Union City, for appellant.

William M. Leech, Jr., Atty. Gen., Ann Lacy Johns, Asst. Atty. Gen., Nashville, David G. Hayes, Dist. Atty. Gen., Union City, for appellee.

## OPINION

DUNCAN, Judge.

The appellant-defendant, Bobby Roberson, was convicted of robbery, burglary and involuntary manslaughter, receiving penitentiary sentences of not less than eight (8) years nor more than fifteen (15) years, not less than five (5) years nor more than fifteen (15) years, and not less than two (2) years nor more than five (5) years, respectively. He received concurrent sentences for his burglary and robbery convictions and a consecutive sentence for his involuntary manslaughter conviction.

In this appeal the defendant makes a limited challenge to the evidence concerning his manslaughter conviction, raises a double jeopardy issue, complains about his preliminary hearing not being recorded, and argues that the trial court erred in allowing his indicted codefendant, Earsie Allen, to testify. We find no reversible error.

The defendant concedes that the evidence is sufficient to support the jury's verdict finding him guilty of robbery and burglary. However, with regard to his involuntary manslaughter conviction, he raises a cause of death issue. He contends that the evidence is insufficient to show that the deceased's death was the result of the defendant's unlawful acts. We find no merit to this contention.

As the defendant concedes, the direct and circumstantial evidence was sufficient to show beyond a reasonable doubt that on August 25, 1981, the defendant, in company with Earsie Lee Allen, Jr., went to the home of the deceased, Reverend William Fowlkes, who was over ninety (90) years

old, beat him up and robbed him of some items of personal property. As a result of the beating the deceased received, he was taken to the hospital where he remained until his death on September 17, 1981. The evidence showed that the elderly victim had a history of various serious medical problems, extending over a period of several years. However, he was ambulatory prior to this crime, and he lived alone. A friend came to his house from time to time to tend some of his needs. When the victim was admitted to the hospital on August 25, 1981, Dr. Chesley H. Hill, the examining physician, found that he had sustained a rather "marked beating," by a "stick or ball bat or something like that," and that his scalp "was loose from the bone and was filled with blood up under the scalp." The victim had numerous other bruises on his body. Dr. Hill stated that he treated the victim over a period of approximately three (3) weeks, but that the victim went "steadily down hill," would not eat or respond mentally, and died on September 17, 1981.

Dr. Hill testified that the deceased died from "bronchial pneumonia," but we conclude that the evidence is sufficient to show that the deceased's susceptibility to this malady and his inability to fight it were related to the severe beating he received from the defendant. Dr. Hill stated that the victim's pneumonia progressed because he would not cough, and Dr. Hill attributed his failure to cough to his impaired mental condition and added that the victim "just didn't have the fight to take care of the pneumonia in his lungs." Further, Dr. Hill stated that the victim "may not have ever got pneumonia if he hadn't been beaten on." Obviously, the victim's weakened condition brought about by the defendant's wrongful acts inhibited the victim's ability to ward off the pneumonia.

■ One who unlawfully inflicts a dangerous wound upon another is held for the consequences flowing from such injury, whether the sequence be direct or through the operation of intermediate agencies dependent upon and arising out of the original cause. *Odeneal v. State,* 128 Tenn. 60, 157 S.W. 419 (1913). To convict the defendant, it is not necessary that his act or failure to act be the sole cause, nor the most immediate cause of death. It is only necessary that the defendant unlawfully contributed to the death of the deceased. *Letner v. State,* 156 Tenn. 68, 299 S.W. 1049 (1927).

■ In view of the facts in the present case and the law applicable thereto, we are satisfied that the State has carried its burden in proving beyond a reasonable doubt that the death of the victim was brought about by the unlawful acts of the defendant. We find that the evidence is sufficient to show that the victim's death was the natural and probable result of the defendant's unlawful acts, and is sufficient to support a verdict of involuntary manslaughter. *Harper v. State,* 206 Tenn. 509, 334 S.W.2d 933 (1960); *Wade v. State,* 174 Tenn. 248, 124 S.W.2d 710 (1939).

■ Next, the defendant contends that he was subjected to double jeopardy when he was convicted of robbery, burglary and involuntary manslaughter, all arising out of a single criminal episode. He argues that since one of the indictments charged him with felony-murder, it was improper for him to be convicted of any degree of homicide under this indictment and also to be convicted of the underlying felonies (robbery and burglary, as charged in the other indictment).

As indicated, the defendant was charged in one indictment in separate counts with robbery and burglary. In another indictment he was charged with felony-murder (murder while in the perpetration of burglary and robbery). He was convicted of both robbery and burglary on the first indictment, and of the lesser offense of involuntary manslaughter on the other indictment.

The defendant cites *Briggs v. State,* 573 S.W.2d 157 (Tenn.1978), and *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), in support of his double jeopardy claim. However, we do not see that these cases are applicable to the present case. In *Harris,* the United States

Supreme Court held that the defendant, after being convicted of felony-murder, could not be convicted in a subsequent trial for the underlying felony. In *Briggs,* the defendant was convicted in the same trial of felony-murder and armed robbery. Our Supreme Court, in applying the holding of *Harris,* set aside the armed robbery (the underlying offense) conviction. However, our Supreme Court expressly stated that it interpreted *Harris* as "applying solely to felony-murder convictions." [1]

Thus, we conclude that there is no double jeopardy problem in the present case. The defendant was not convicted of felony-murder; rather his trial on the indictment that charged that offense resulted in a conviction for involuntary manslaughter.

We find that the defendant's conviction for involuntary manslaughter as well as his convictions for the offenses of burglary and robbery were proper. His offenses are separate and distinct, each offense requires proof of a different fact than the other, and none of the offenses are included in the others. *State v. Black,* 524 S.W.2d 913 (Tenn.1975).

■ Next, the defendant says that the trial court should have dismissed the indictments because his preliminary hearing was not recorded. Also, he argues that for the same reason, Earsie Lee Allen's testimony should have been excluded.

The record shows that a good faith effort was made to record the preliminary hearing, but for some unstated reason, portions of the tapes turned out to be inaudible. The record shows that the defendant's attorney was present at the preliminary hearing, and thus he was aware of the preliminary testimony of Allen and the other witnesses. We find no prejudice has resulted to the defendant.

■ In another complaint, the defendant says that his indicted codefendant, Earsie Allen, should not have been allowed to testify because the State omitted his name from the list of prospective witnesses that had been furnished to the defendant.

The record shows that some two (2) weeks prior to the trial, the defendant's attorney was present in court at a hearing when the district attorney general told the court that the State anticipated using Allen as a State's witness. Also, the defendant's counsel had heard Allen's testimony at the preliminary hearing. Thus, the defendant was aware that Allen was likely to be a witness and was aware of the nature of his testimony; therefore, it was not error for the trial court to allow the witness to testify. *See Thomas v. State,* 3 Tenn.Cr.App. 589, 465 S.W.2d 887 (1970).

■ Ordinarily, a witness is not disqualified from testifying even though his name does not appear on the indictment. *State v. Gilbert,* 612 S.W.2d 188 (Tenn.Cr.App.1980). This is particularly so when the record shows that the defendant was not surprised or handicapped in the preparation of his defense. *Cook v. State,* 3 Tenn.Cr.App. 685, 466 S.W.2d 530 (1971). This record demonstrates that the defendant was not surprised, handicapped or prejudiced by the absence of Allen's name on the State's list of witnesses. We find no merit to this complaint.

We note that in his brief the defendant enumerated a number of other alleged errors but did not brief them. Thus, the remainder of the defendant's complaints have been waived. *Moorman v. State,* 577 S.W.2d 473 (Tenn.Cr.App.1978). Also, we point out that the defendant in his brief concedes that these additional complaints are not meritorious.

---

1. We call attention to the case of *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), in which the United States Supreme Court indicated that dual convictions at the same trial for felony-murder and the underlying felony would be proper, but that cumulative punishments for the two (2) of-fenses could not be imposed unless the legislature evinced a clear intent to so punish. Since we are not dealing with a felony-murder conviction here, we need not consider whether our legislature intended to have cumulative punishments imposed for felony-murder and the underlying felony.

The judgments of the trial court are affirmed.

WALKER, P.J., and BYERS, J., concur.