IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 5, 2004

## STATE OF TENNESSEE v. MICHAEL WOODS

**Appeal from the Criminal Court for Shelby County**
**No. 99-09509      W. Fred Axley, Judge**

---

**No. W2003-02762-CCA-R3-CD  - Filed February 17, 2005**

---

The Appellant, Michael Woods, was convicted by a Shelby County jury of second degree murder and sentenced to twenty-five years imprisonment.  On appeal, Woods raises four issues for our review:  (1) whether the evidence is sufficient to support the conviction; (2) whether the trial court erred by allowing the State to use Woods' prior criminal convictions for purposes of impeachment when the convictions were more than ten years old; (3) whether the trial court erred by refusing to allow Woods to present proof that two other co-defendants had been convicted of the crime; and (4) whether the sentence is excessive.  After review of the record, we find that because Woods' motion for new trial was not timely filed, issues 2 and 3 are waived.  After review of issues 1 and 4, we find no error and affirm the conviction and resulting sentence.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, J., filed a separate concurring opinion with regard to sentencing, in which JAMES CURWOOD WITT, JR., J., joined.

Gerald Skahan, Memphis, Tennesssee, Attorney for the Appellant, Michael Woods.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Reginald Henderson, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

On the evening of April 30, 1999, the Appellant, along with Andy Anderson, Robert Page, and Lacey Woods, was involved in the brutal beating of the victim, Roosevelt Burgess, which resulted in Burgess' death.  Around 10:00 p.m., the Appellant and Robert Page were observed by Michael Miller when they entered his family owned grocery store on Third Street in Memphis.  Shortly thereafter, Carrie Jones and her daughter Irmon, who lived behind the grocery on Fourth

Street, saw someone being beaten outside their home. Carrie Jones testified that she heard the Appellant say that the victim owed the men money for crack. Both Jones and her daughter stated that the four men, whom they recognized from the neighborhood, were beating the victim with sticks, bricks, and bottles. At one point, the victim broke free and ran, but the four men pursued him. Upon catching the victim near Third Street and Auction, the four resumed their attack, with the Appellant striking the first blow. The four men continuously beat the victim with sticks until he collapsed and then proceeded to kick the victim after he fell to the ground. Miller testified that he also witnessed the four men taking turns beating the victim with a stick. He testified that the beating lasted approximately eight minutes.

Police and emergency personnel were called to the scene and found the victim lying face down on the ground. He was pronounced dead on arrival from what was later determined to be blunt force trauma to the head. Investigators found a splintered and bloody "2' x 4'" and a plastic traffic barricade on the ground near the victim.

The Appellant and three co-defendants were indicted by a Shelby County grand jury on August 17, 1999, for second degree murder. The trial court granted a motion for severance with regard to all four defendants. The Appellant's trial commenced on June 23, 2003, with the jury returning a guilty verdict on June 28. Following a sentencing hearing on September 25, 2003, the trial court sentenced the Appellant to twenty-five years, as a violent offender, in the Department of Correction. The Appellant filed a motion for new trial on October 30, 2003, which was denied the same day. Notice of appeal was filed November 13, 2002.

**Analysis**

As a preliminary matter, the State contends that the Appellant failed to file a timely motion for new trial; thus, all issues except sufficiency of the evidence and sentencing are waived.

A motion for new trial "shall be made . . . within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This provision is mandatory, and the time for filing may not be extended. Tenn. R. Crim. P. 45(b); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997); *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). The thirty-day provision is jurisdictional, and an untimely motion is a nullity. *Dodson*, 780 S.W.2d at 780. It deprives the defendant of the opportunity to argue on appeal any issues that should have been raised in the motion for new trial. *Martin*, 940 S.W.2d at 569. Furthermore, the untimely filing of a motion for new trial does not toll the time for filing a notice of appeal; thus, an untimely motion for new trial will often also result in an untimely notice of appeal. *State v. Davis*, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987). Unlike the untimely filing of the notice of appeal, this court does not have the authority to waive the untimely filing of a motion for new trial. Tenn. R. App. P. 4(a); *see also State v. Givhan*, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980).

The judgment in this case was entered on September 25, 2003. The Appellant filed a motion for new trial on October 30, 2003, five days beyond the thirty-day requirement. Thus, the untimely

motion is a nullity. Because the Appellant's motion for new trial was untimely, his notice of appeal filed on November 13, 2003, was also untimely.

Due to the untimely filing of his motion for new trial, the Appellant has waived the following two evidentiary issues: (1) whether the trial court erred by allowing the State to use prior convictions for impeachment purposes despite the fact that they were over ten years old and (2) whether the trial court erred by refusing to allow the Appellant to present proof with regard to the conviction of two co-defendants. We decline plain error review of these two evidentiary issues because they do not rise to the level of affecting a substantial right which would necessitate review in order to do substantial justice. *See* Tenn. R. Crim. P. 52(b). Under Tenn. R. App. P. 4(a), the notice of appeal document is not jurisdictional in criminal cases, and the filing of this document may be waived in the interest of justice. Although not automatic, we conclude that waiver is appropriate in this case in order to permit review of the Appellant's issues of sufficiency of the evidence and sentencing.

## 1. Sufficiency of the Evidence

The Appellant argues that the evidence is insufficient to support his conviction for second degree murder. In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant bears the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

First, the Appellant contends that the evidence is insufficient because the testimony of Carrie Jones was not credible. Specifically, he asserts that "it would be impossible for Ms. Jones to observe the men where the beating occurred [near Third and Auction] from her position on Fourth and Auction due to a large brick building that used to sit on the corner and would have blocked her view." Ms. Jones, a material witness for the State, was thoroughly cross-examined at trial concerning this issue. Both Jones and her daughter, Irmon Jones, testified that they were able to see the first beating, which occurred in front of their house, and the second beating, which occurred near Third and Auction. With regard to the second beating, Carrie Jones testified that she left the porch

of her house and followed the four men as they moved down Fourth Street, never losing sight of them.

Although the physical facts rule is not specifically asserted, this rule would allow this court, in a sufficiency review, to disregard the testimony of a witness when that witness's testimony could not be reconciled with the physical evidence. *See State v. Hornsby*, 858 S.W.2d 892, 894-95 (Tenn. 1993). The proof in this case does not implicate the physical facts rule. In order for us to disregard the challenged testimony, the physical facts must be "well-established and universally recognized physical laws." *Nelms v. Tennessee Farmers Mut. Ins. Co.*, 613 S.W.2d 481, 483 (Tenn. Ct. App. 1978). During cross-examination and recross-examination, the witness repeatedly asserted that she was able to view the beating from her position at Fourth and Auction. She disputed the Appellant's assertion that it would have been impossible for her to see the beating from her vantage point. The Appellant offered no physical evidence to contradict the witness's testimony other than his argument that it would have been "impossible for Ms. Jones to witness the beating."

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d at 620, 623 (Tenn. Crim. App. 1987). Because we are precluded from reweighing or reconsidering the evidence when evaluating the convicting proof, this issue is without merit. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996).

Next, the Appellant generally argues that the proof at trial is insufficient to support his conviction. The Appellant, testifying in his own defense, stated that he never hit the victim and thus was not a participant in the homicide. To support a conviction for second degree murder, the proof must show that the Appellant knowingly killed another. Tenn. Code Ann. § 39-13-210 (2003). A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. Tenn. Code Ann. § 39-11-302(b) (2003). Thus, a "knowing" killing is one in which the person is aware that the conduct is reasonably certain to cause death. *See State v. Ducker*, 27 S.W.3d 889, 896 (Tenn. 2000). Moreover, to sustain a criminal conviction for second degree murder, the evidence must establish that the defendant's action or conduct caused the victim's death. Causation is an essential element of every homicide offense. *State v. Farner*, 66 S.W.3d 188, 204 (Tenn. 2001). Generally, this is established by showing that the victim's death was the natural and probable result of the defendant's unlawful conduct. *State v. Richardson*, 995 S.W.2d 119, 125 (Tenn. Crim. App. 1998) (citing *State v. Barnes*, 703 S.W.2d 611, 614-15 (Tenn. 1985)). The defendant's unlawful act or omission need not be the sole or immediate cause of the victim's death. *Farner*, 66 S.W.3d at 203 (citing *Letner v. State*, 299 S.W. 1049, 1051 (Tenn. 1927)). "It is only necessary that the defendant unlawfully contributed to the death of the deceased." *Richardson*, 995 S.W.2d at 125 (citing *State v. Roberson*, 644 S.W.2d 696, 698 (Tenn. Crim. App. 1982)).

When two or more actors are involved in a homicide, both producing injuries:

If, at the moment of death, it can be said that both injuries are contributing thereto, the responsibility rests on both actors. In such cases, the law does not measure the effects of the several injuries in order to determine which is the more serious, and which contributes in the greater measure to bring about the death. So one of two persons who cause the death of another by shooting is guilty of homicide if the wound inflicted by that person contributes to or hastens the death, although alone it might not be fatal.

40 AM. JUR. 2d *Homicide* § 14 (1999).

This principle of law is oftentimes referred to as concurrent causation. That is, the individual acts, taken together, are a "but for" cause, but each actor is liable for his or her own intentional conduct." *See Model Penal Code* § 2.03 (Official Draft and Revised Comments 1985); *see, e.g.*, Wayne R. LaFave and Austin W. Scott, Jr., *Criminal Law* § 35, at 246-50 (1972).[1]

The concept of contributory causes is separate from forms of imputed culpability. It does not implicate imputed criminal responsibility; it addresses causation. It describes an amalgam of individual acts where each individual acts with the required culpable mental state but not necessarily to aid another. The *actus reus* is the physical act of the individual, not a third person. Where the result is a prohibited end under law and other contributory causes combine to bring about the prohibited result, it is sufficient to impose culpability on the actor without the need for any concept of conspiracy or aiding and abetting.

*United States v. Cooley*, 1 F.3d 985, 997 (10th Cir. 1993).

At trial, both Ms. Jones and her daughter identified the Appellant as one of the four men who hit and beat the victim. Miller testified that he saw four men taking turns beating the victim. Ms. Jones testified that the four men beat the victim with a stick, "[t]hen they was picking bricks and bottles up and hitting him with them." Although the victim managed to escape this first assault, he was chased down by his four attackers. Jones identified the Appellant as the "first one that got to him" and stated that the Appellant hit the victim continuously. After falling to the ground, the victim was repeatedly kicked by the group. Postmortem examination revealed twelve or more blows to the victim's head, with cause of death being blunt trauma with injury to the brain.

The facts of this case establish that the Appellant, along with others, concurrently beat the victim with sticks and other objects and kicked him as he fell to the ground. The proof, in the light

---

[1] On November 1, 1989, Tennessee enacted a new criminal code which was in large part an adoption of the American Law Institute's Model Penal Code.

most favorable to the State, establishes that the Appellant's acts contributed to the death of the victim and that "but for" the acts of all, death would not have occurred. Accordingly, we conclude that the evidence is legally sufficient to support the Appellant's conviction for second degree murder.

## 2. Sentencing

The Appellant argues that his twenty-five year sentence is excessive. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. When conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); *Ashby*, 823 S.W.2d at 168. On appeal, the Appellant bears the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments.

The Appellant was convicted of second degree murder, a class A felony, which carries a sentencing range of fifteen to twenty-five years. Tenn. Code Ann. § 40-35-112(1) (2003). The presumptive sentence for a class A felony is the midpoint within the range unless there are enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). When there are enhancement factors but no mitigating factors present, the court shall set the sentence at or above the midpoint of the range. *Id*. at (d). If both enhancement and mitigating factors are present, then the court must start at the midpoint of the range, enhance as appropriate for enhancement factors and then reduce the sentence as appropriate for applicable mitigating factors. *Id*. at (e). Moreover, the weight to be assigned to the appropriate enhancement and mitigating factors falls within the sound discretion of the trial court so long as that court complies with the purposes and principles of the 1989 Sentencing Act and its findings are supported by the record. *State v. Boggs*, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996).

The trial court imposed a twenty-five-year sentence based upon the application of three enhancement factors: (2) the Appellant has a previous history of criminal convictions; (6) the Appellant treated or allowed the victim to be treated with exceptional cruelty during the commission of the offense; and (9) the Appellant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. *See* Tenn. Code Ann. § 40-35-114 (2), (6), (9). The trial court found no applicable mitigating factors.

On appeal, the Appellant challenges only the application of factor (6). The Appellant concedes that his criminal history includes twenty-seven convictions. The presentence report reflects

convictions for disorderly conduct, multiple possession of drug offenses, gambling, simple assault, evading arrest, felony sale of drugs, attempted grand larceny, receiving stolen property, and a weapons offense. Additionally, the report establishes a prior violation of probation. Moreover, at the sentencing hearing, trial counsel stated with regard to factor (2), "we would submit there is valid grounds for the Court to find enhancement factor number two in that he does have prior convictions." With regard to factor (9), counsel stated "we would submit he does have a prior violation of probation conviction on his record."

Without reference to authority, the Appellant alleges that application of factor (6) was error and resulted in an excessive sentence. Treatment of a victim with exceptional cruelty is not an element of the offense of second degree murder and may, under proper circumstances, be considered as an enhancement factor. *State v. Gray*, 960 S.W.2d 598, 611 (Tenn. Crim. App. 1997). However, proper application of this factor requires a finding of cruelty "over and above" what is required for the offense itself. *State v. Arnett*, 49 S.W.3d 250, 258 (Tenn. 2001). "'Exceptional cruelty,' when used as an enhancement factor, denotes the infliction of pain or suffering for its own sake or from the gratification derived therefrom, and not merely pain or suffering inflicted as the means of accomplishing the crime charged." *State v. Reid*, 91 S.W.3d 247, 311 (Tenn. 2002). This factor is most often found in cases of abuse or torture, but it has been found applicable in cases where traumatic and severe injuries were sustained by the victim. *Gray*, 960 S.W.2d at 611. When applying this factor, the trial court should state the actions of the defendant, apart from the elements of the offense, which constitute exceptional cruelty. *State v. Goodwin*, 909 S.W.2d 35, 45-46 (Tenn. Crim. App. 1995).

In this case, the trial court failed to make sufficient findings to support this factor, stating only that "the defendant treated or allowed the victim to be treated with exceptional cruelty during the commission of this offense and particularly as to what [the Appellant] did from the testimony of the witnesses." Nonetheless, we conclude that the killing of the victim was done in an exceptionally cruel manner as reflected by the facts of this case. When the victim managed to break free, he was chased two blocks by four men who then took turns bashing his head with a "2' x 4'" and a traffic barricade. The beating lasted approximately eight minutes. After the victim fell to the ground, apparently unconscious, the group repeatedly kicked him. Medical testimony established that the victim suffered significant injuries to the head including multiple lacerations caused by blunt force trauma and additional injury to the brain. The medical examiner testified that the victim received a minimum of twelve blows to the head. Based upon these facts, we conclude that there is evidence of exceptional cruelty separate and apart from the actions which constituted the offense of second degree murder, thus justifying application of the enhancement factor.

Although not raised as an issue, we note at this juncture the recent United States Supreme Court decision in *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004), clarifying and extending its decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000). The *Blakely* court held that any fact that increases a sentence beyond the "relevant statutory maximum," defined as the maximum sentence that a judge may impose without making any additional findings of fact, must be submitted and proved to the jury beyond a reasonable doubt or admitted by the defendant.

-7-

*Blakely*, 542 U.S. at \_\_\_, 124 S. Ct. at 2536-37. Thus, adherence to *Blakely* requires that any enhancement factors, other than prior criminal history, can be applied only if found by a jury or admitted by the defendant. *Id*. This holding was reaffirmed in *United States v. Booker*, 543 U.S. \_\_\_, 125 S. Ct. 738, 769 (2005).

In this case, the Appellant raised no issue regarding a sentencing error under *Apprendi* at the trial level or on appeal. In finding waiver under these same circumstances, the court in *United States v. Levy*, 379 F.3d 1241 (11th Cir. 2004) observed, "the rule requiring that issues be raised in opening briefs serves valuable purposes, as do all of the procedural default rules, which is why we regularly apply them." Moreover, in *United States v. Cotton*, 535 U.S. 625, 631-34, 122 S. Ct. 1781 (2002), the Supreme Court held, after its decision in *Apprendi*, that the defendant's claim of right to a trial and finding by a jury on a fact used to enhance the defendant's sentence was forfeited because it was not raised at trial. Accordingly, any *Blakely* claim is waived (1) for failure to make a contemporaneous objection in the trial court and (2) for failure to include the issue in his appellate brief. *See* Tenn. R. App. P. 3(e), 36(a).

Because the issue is waived, it is reviewable only under the discretionary authority of plain error. Tenn. R. Crim. P. 52(b). Rule 52(b) provides, "an error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." This court is permitted to correct an error not raised before the trial court only when (1) the lower record is clear, (2) a clear rule of law has been breached, (3) a substantial right has been affected, (4) the waiver was non-tactical, and (5) consideration of the error is necessary to do substantial justice. *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (adopting the test articulated by this court in *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994)). The asserted "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 642.

After review of the sentencing issue under *Blakely*, we conclude that enhancement factors (2), (6), and (9) remain applicable. Use of factor (2), previous criminal history, is expressly permitted under *Blakely*. Additionally, in this case, the Appellant admitted that he had a previous history of unwillingness to comply with the conditions of release into the community. This fact is supported by the presentence report. Accordingly, we conclude that enhancing factors (2) and (9) are not implicated by the holding of *Blakely*. Furthermore, the proof at trial established beyond a reasonable doubt the presence of enhancement factor (6), that the victim was treated with exceptional cruelty. Accordingly, we conclude that a jury would have found this enhancement factor and when weighed with enhancement factors (2) and (9), against no mitigation proof, would have permitted imposition of the twenty-five-year sentence. In view of these circumstances, the Appellant has failed to establish that consideration of the error is "necessary to do substantial justice" or that the error would have changed the outcome of the sentencing decision. *See United States v. Savarese*, 385 F.3d 15 (1st Cir. 2004).

The reasoning of the United States Supreme Court in *Cotton* is similar to, but not identical with, harmless error analysis. . . . [I]f the defendant points to plain error that affected substantial rights, then an appellate court has discretion to correct the error. Normally, although perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy the "affecting substantial rights" prong of Rule 52(b). But such a showing is not itself sufficient. An appellate court should not correct the error unless it "seriously affects the fairness, integrity or public reputation of judicial proceedings."

It was this latter test the Supreme Court applied in *Cotton*, concluding that when the defendants did not object in the district court to the sentencing proceeding and did not attempt to dispute or controvert the evidence in support of a sentencing factor that justified the sentence imposed, and the evidence of the factor was overwhelming, then forfeiture applies and reversal on appeal is wholly unwarranted.

*People v. George Carl Sample*, 2004 Cal. App. LEXIS 1513, No. C044445 (Cal. Ct. App., 3rd D. Sept. 13, 2004) (internal citations omitted). Moreover, the Supreme Court's recent decision in *U.S. v. Booker*, 543 U.S. ___, 125 S. Ct. 738, 769 (2005), clearly contemplates that not "every [*Blakely/Booker*] appeal will lead to a new sentencing hearing. That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test."

## CONCLUSION

Based upon the foregoing, we conclude that the evidence is sufficient to sustain the Appellant's conviction for second degree murder and that the resulting twenty-five year sentence is not excessive. Accordingly, the judgment of conviction and sentence are affirmed.

_____
DAVID G. HAYES, JUDGE