IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

AUGUST 1996 SESSION


STATE OF TENNESSEE,        \*      C.C.A. # 02C01-9509-CC-00282

         Appellee,      \*      MADISON COUNTY

VS.        \*      Hon. Franklin Murchison, Judge

ELTON DONALD BOWERS    \*
a/k/a RASHID QAWWI,      (Aggravated Robbery)
        \*
         Appellant.
        \*

FILED

March 26, 2008

Cecil Crowson, Jr.

Appellate Court Clerk

For Appellant:

Stephen P. Spracher
Assistant Public Defender
227 West Baltimore
Jackson, TN  38301

For Appellee:

Charles W. Burson
Attorney General & Reporter

Ellen H. Pollack
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

Donald Allen
Asst. District Attorney General
P.O. Box 2825
Jackson, TN  38302


OPINION FILED:_____



AFFIRMED AND REMANDED



GARY R. WADE, JUDGE

# OPINION

The defendant, Elton Donald Bowers, also known as Rashid Qawwi, was convicted of aggravated robbery and possession of a weapon with the intent to employ in the commission of the robbery. Tenn. Code Ann. § 39-13-402 and Tenn. Code Ann. § 39-17-307. The trial court ordered the weapons conviction merged with the aggravated robbery, classified the defendant as a career offender, and imposed a thirty-year sentence.

In this appeal of right, the defendant insists that the trial court erred by prohibiting the use of an unauthenticated transcript of the preliminary hearing and by classifying the defendant as a career offender (60%).

The conviction is affirmed; because the defendant was erroneously classified a career offender, the cause is remanded for sentencing.

On March 11, 1992, Lashun Cole, an employee at the Texaco Food Mart in Jackson, was robbed at knife point by a five-and-a-half to six-foot, slender black male with a light complexion and "a toboggan over his mouth." The victim, who was alone at the time of the robbery, "could see [the robber] from the nose up." The robber took some $40.00 from the cash register. The victim looked at the robber only once before she was directed not to do so. A security camera videotaped the robbery. The entire incident took less than five minutes.

The next day, the victim, who had previously reviewed the tape (apparently of very poor quality) of the robbery, identified the defendant from a photographic lineup. According to police, the defendant matched the description

2

given by the victim at the scene. At the time of his arrest, the defendant was hiding under a pile of laundry in a utility room.

Later, at the time of trial, the victim testified that she had seen the defendant a month or two before the robbery and recognized him as the brother of her friend, Karen Bowers; the victim explained that she did not know his name at that time and did not know his name at the time of the robbery.

I

A little over two weeks after the robbery, there was a preliminary hearing. A tape-recording of the proceeding was made by the city court clerk and maintained on file for well over a year; the tape was erased before the trial of the case. The defendant was represented at the time by an attorney who resigned from the public defender's office sometime before trial.

The trial was conducted some two and one-half years after the preliminary hearing. The victim was cross-examined about her testimony at the preliminary hearing. The central issue, of course, was whether the victim had been able to make an accurate identification of the defendant. Defense counsel attempted to utilize an unauthenticated transcription of the preliminary hearing as a means of challenging the identification; the transcription had been prepared by the public defender's office, apparently from a recording of the clerk's original tape of the preliminary hearing. When the victim could not recall the answers she had provided at the earlier proceeding, defense counsel issued an instanter subpoena for the city court clerk. Later, the clerk of the city court testified in a jury-out proceeding that she could not recall anyone requesting a copy of the tape; in

3

accordance with established office policy, the tape had been erased about one and one-half years after the preliminary hearing.

The defendant contends that the testimony of the victim at trial was inconsistent with much of her testimony at the preliminary hearing. He argues that the clerk of the city court violated Rule 5.1(a), Tenn. R. Crim. P., which provides, in pertinent part, as follows:

> The evidence of the witnesses is not required to be reduced to writing by the magistrate, or under the magistrate's direction, and signed by the respective witnesses; but the proceedings shall be preserved by electronic recording or its equivalent and when the defendant is subsequently indicted such recording shall be made available for listening to by the defendant or defendant's counsel to the end that they may be apprised of the evidence introduced upon the preliminary examination.

(Emphasis added).

The defendant, whose counsel was obviously aware of the content of the tape and whose office purportedly made a copy, argues that his inability to confront the victim with her prior inconsistent testimony affected his right to a fair trial. It was stipulated that the tape in the public defender's office had been in the defendant's file since current defense counsel's employment on April 1, 1993. The personnel in the public defender's office apparently changed before trial. "There was no way," in the words of defense counsel, "to get our copy certified."

Although the rule requiring the maintenance of a tape-recording of a preliminary hearing is mandatory, the burden is on the defendant to establish prejudice from the noncompliance with the rule. State v. Roberson, 644 S.W.2d 696 (Tenn. Crim. App. 1982); State v. McBee, 644 S.W.2d 425 (Tenn. Crim. App. 1982); State v. Butts, 640 S.W.2d 37 (Tenn. Crim. App. 1982). In Roberson, McBee, and

4

Butts, the state prevailed even though the defendant was not provided access to a tape or transcript of the preliminary hearing.

Here, defense counsel had access to the tape for well over a year. A recording was made of the original and maintained in the office of the public defender. The content was typed and, although not presented as evidence, was made an exhibit for identification purposes. In a sense, the defendant was "apprised of the evidence introduced at the preliminary examination" as required by Rule 5.1, Tenn. R. Crim. P. That is, despite the fact that the clerk had erased the original tape, the copy maintained in the public defender's office provided notice of the victim's testimony. Further, by using his own office's transcription, defense counsel actually cross-examined the victim about the content of her prior testimony. Because the victim could not recall her testimony some two and one-half years earlier, the cross-examination was not as effective as desired by the defense. Obviously, that was a disappointment from the defense perspective. Had an authenticated transcript been available, the state's case may have been weakened. That is, however, largely speculative.

It is the duty of the appellant to adequately establish a basis in the record for the appeal. State v. Miller, 737 S.W.2d 556 (Tenn. Crim. App. 1987). Absent that, there is a presumption the trial court correctly ruled. See Dearborne v. State, 575 S.W.2d 259 (Tenn. 1978). Here, we cannot find that the specific terms of Rule 5.1 were violated. Moreover, the record does not demonstrate that the defendant was prejudiced by the erasure of the original tape. The real problem, of course, is that the defendant was unable to present the original audiotape, his copy, or an authenticated transcript in order to show a more equivocal identification by the victim. See Rule 901(a), Tenn. R. Evid. At trial, the state declined to stipulate the

5

authenticity (or the accuracy) of the transcription made in the office of the public defender.

In this appeal, defense counsel's specific complaint is that his office's transcription was excluded; his insistence is that the document should have been permitted into evidence under Rule 803(6), Tenn. R. Evid., as a "record of regularly conducted activity":

> **Records of Regularly Conducted Activity**. A memorandum, report, record, or data compilation in any form of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes every kind of business, institution, association, profession, occupation, and calling, whether or not conducted for profit.

This was not the issue presented in the trial court. It is, therefore, entirely understandable then that the prerequisites to the admission of evidence under this rule had not been met. The record does not establish that, among other things, a custodian of the document recorded the information in the regular course of business or that the transcription, which is unclear in parts, is trustworthy. This may appear to be a technical distinction. Our examination of the office transcript, however, indicates that the transcriber made interpretations, rather than verbatim accounts, of at least two of the answers given by the victim. For example, "uh-huh" was interpreted as a negative response. That is cause for concern.

In summary, we find no merit to this issue.

II

Next, the defendant contends that the trial court should have sentenced him as a Range III, persistent offender rather than a career offender. A career offender is defined by statute:

> **40-35-108. Career offender.**--(a) A "career offender" is a defendant who has received [either]:
>    (1) Any combination of six (6) or more Class A, B or C prior felony convictions, and the defendant's conviction offense is a Class A, B or C felony;
>    (2) At least three (3) Class A or any combination of four (4) Class A or Class B felony convictions if the defendant's conviction offense is a Class A or B felony; or
>    (3) At least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony.

A persistent offender, Range III, is also defined by statute:

> **40-35-107. Persistent offender.**--(a) A "persistent offender" is a defendant who has received [either]:
>    (1) Any combination of five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes, where applicable; or
>    (2) At least two (2) Class A or any combination of three (3) Class A or Class B felony convictions if the defendant's conviction offense in a Class A or B felony.

By our count, the defendant had been convicted of 12 felonies of various classifications by the time sentence was imposed. The offense at issue, his thirteenth felony, was committed March 11, 1992. In order to be classified as a career offender and because the defendant was convicted here of a Class B felony, there must have been either six or more Class A, B, or C prior felony convictions or any combination of four Class A or B felony convictions. Tenn. Code Ann. § 40-35-108. Offenses committed as a single course of conduct within twenty-four hours, unless "resulting in bodily injury or threatened bodily injury," count as only one. Id.

There was an aggravated robbery conviction (Class B) and a weapons conviction arising out of an incident on March 5, 1992; there was an aggravated robbery (Class B) and a weapons conviction on March 7, 1992. The defendant argues that neither of these can be counted because, by the words of the statute, the defendant must have been convicted of the prior felonies before he committed the crime for which he is being sentenced. In State v. Blouvett, 904 S.W.2d 111 (Tenn. 1995), our supreme court ruled that the legislature intended for "prior conviction" to be "conviction that has already been adjudicated before commission of the offense at issue." Id. at 113. Thus neither the March 5 or March 7, 1992, offenses would qualify.

Those offenses for which the defendant had been convicted before the commission of this offense on March 11, 1992, are as follows:

| Offense | Classification | Date of Offense | Date of Conviction | Sentence |
|---|---|---|---|---|
| Aggravated Assault | C | 5/7/83 | 9/28/83 | 4 |
| Armed Robbery | B | 5/7/83 | 9/28/83 | 30 |
| Temporary Use of Mo. Vh. | E | 5/7/83 | 9/28/83 | 1 |
| Armed Robbery | B | 5/7/83 | 9/28/83 | 30 |
| Armed Robbery | C | 8/22/78 | 1/25/79 | 5 |
| Third Degree Burglary | D | 9/18/76 | 1/21/77 | 4 |
| Third Degree Burglary | D | 9/18/76 | 1/21/77 | 4 |
| Third Degree Burglary | D | 9/18/76 | 1/21/77 | 4 |

From this, it is apparent that the defendant does not qualify as a career offender; that is, there are neither six A, B, or C felonies or four A or B felonies. The next lower classification is that of a persistent offender. Any combination of five A, B, C or D felony convictions or three Class A or B felonies qualifies this defendant as a persistent offender. Tenn. Code Ann. § 40-35-107. Felonies committed within a twenty-four-hour period count as one unless the offense either threatens or results in bodily injury.

The record indicates that the three 1977 Class D felonies all occurred September 18, 1976; because no injury occurred or was threatened, that would only count as one prior conviction. Even though two of the armed robberies and the aggravated assault occurred within 24 hours on May 7, 1983, all involved at least the threat of bodily injury and, in our view, each would qualify as "prior conviction." See State v. Horton, 880 S.W.2d 732, 736 (Tenn. Crim. App. 1994). The 1983 offense of temporary use of a motor vehicle, a felony carrying a one-year sentence, would be classified a misdemeanor under the 1989 Act; even if classified a felony, however, it would receive a non-qualifying Class E grade. Thus, with a total of five Class B, C, and D prior convictions at the time of this offense, the defendant should have been classified as a Range III, persistent offender (45%).

The trial court imposed a thirty-year sentence as required of a career offender who has committed a Class B felony. See Tenn. Code Ann. §§ 40-35-108(c), -112(c)(2). As a persistent offender, however, the defendant qualified for a range of between twenty and thirty years. Tenn. Code Ann. § 40-35-112(c)(2). Thus, there must be a remand as to the length of the sentence based upon the applicable enhancement factors.

The judgment of conviction is affirmed. The cause is remanded for the imposition of a sentence within Range III.

_____
Gary R. Wade, Judge

CONCUR:


_____
William M. Barker, Judge

9

_____
Jerry L. Smith, Judge