**Ronald Donnell MOORE, Petitioner,**

v.

**Henry STEWARD, Respondent.**

No. 09–2698–JPM–cgc.

United States District Court,
W.D. Tennessee,
Western Division.

June 7, 2013.

---

Ronald Donnell Moore, Henning, TN, pro se.

Andrew Craig Coulam, James E. Gaylord, Tennessee Attorney General's Office, Jennifer L. Smith, Office of the Attorney General, Criminal Justice Division, Nashville, TN, for Respondent.

## ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2254

## ORDER DENYING CERTIFICATE OF APPEALABILITY

## ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH AND ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

JON P. McCALLA, Chief Judge.

Before the Court is the Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner Ronald Donnell Moore, Tennessee Department of Correction prisoner number 120577, an inmate at the West Tennessee State Penitentiary in Henning, Tennessee. (ECF No. 1.) The Government filed an Answer to the Petition on January 21, 2010. (ECF No. 10.)

For the reasons stated within, Moore's Petition is DENIED.

## I. BACKGROUND

### A. State–Court Procedural History

On July 13, 1992, Moore was indicted by a grand jury in Shelby County, Tennessee, for the first-degree murder of Daniel Miller. (ECF No. 10 at 4.) A jury trial in the Shelby County Criminal Court commenced on May 3, 1994, and, on May 5, 1994, the jury returned a guilty verdict on the sole count of the Indictment. (Id.; ECF No. 1 at 6.) Moore was subsequently sentenced

to life imprisonment with the possibility of parole. (ECF No. 10 at 4.) The Tennessee Court of Criminal Appeals affirmed. *State v. Moore,* No. 02C01–9412–CR–00296, 1995 WL 555076 (Tenn.Crim.App. Sept. 20, 1995), *appeal denied* (Tenn. Mar. 4, 1996).

On March 4, 1997, Moore filed a pro se petition pursuant to the then-current version of the Tennessee Post–Conviction Procedure Act, Tenn. Code Ann. §§ 40–30–201 through –222, in the Shelby County Criminal Court. (ECF No. 9–15 at PageID 435–47.) The State answered the Petition on March 10, 1997. (Id. at PageID 466.) On May 22, 1997, Peggie Short–Bohannon was appointed to represent Moore. (Id. at PageID 468.) On March 2, 1998, post-conviction counsel filed an amended and supplemental petition. (Id. at PageID 469–73.)

On July 22, 1998, Moore filed a motion for new counsel on the ground that his post-conviction counsel had a conflict of interest. (Id. at PageID 474–75.) In an order issued July 23, 1998, the post-conviction court allowed Short–Bohannon to withdraw and appointed Juni Ganguli to represent Moore. (Id. at PageID 476–77.) On September 11, 1998, Ganguli filed a second amended petition that was identical to the amended petition previously filed by Short–Bohannon. (Id. at PageID 478–81.) That filing asserted that trial counsel was ineffective for failing to investigate an alleged altercation in the victim's hospital room between Cheryl Johnson and "Lisa Watkins"[1] that might have contributed to the victim's death. (Id.) An evidentiary hearing was held on the post-conviction petition on June 24, 1999, at which Moore and the two attorneys who represented him at trial testified. (See June 24, 1999, Hr'g Tr. ("06/24/99 Tr."), ECF No. 9–16, at PageID 508.) At the conclusion of the

---

1. The second participant in the alleged fight is referred to in the Petition and state-court record as Lisa Watkins, Lisa Williams, and Gwendolyn Wright.

hearing, the post-conviction court stated that, "[s]ince the petitioner states that he has two other witnesses that he wishes to call, I'm going to set this for a hearing on September 23rd. And at that time you can bring the two witnesses in." (06/24/99 Tr. 55:1–3, *id.*, at PageID 563.) Counsel was also instructed that, "[i]f between now and September 23rd you decide that you do not want to do those two witnesses, then I need you to come in and bring the petitioner, and we can do final statements so we can go ahead and get this matter taken care of." (06/24/99 Tr. 55:5–9, *id.*, at PageID 563.)

At the hearing on September 23, 1999, Ganguli appeared without Moore and stated that "I understand Your Honor may have already made a ruling on the matter." (Sept. 23, 1999, Hr'g Tr. ("09/23/99 Tr.") 1:22–24, ECF No. 9–17, at PageID 569.) The following exchange then occurred:

MR. GANGULI: Well, Mr. Moore, on his last hearing date, had said that he had some witnesses that he wanted subpoenaed for this court date, for today. I received a letter from him two days ago listing some witnesses that he wanted to have me subpoena. I only received it two days ago so I haven't had time to do that. I don't know if that would really impact the court's ruling.

THE COURT: If you find the witnesses and you want to bring them, I'll entertain it. But I think the ruling has been [ ] made upon everything else. I think at one point we were finished.

MR. GANGULI: All right.

THE COURT: And then you came back and said he might have some witnesses, and I think I may have given you the date so that if he did have some witnesses. What you may want to do also is that, technically speaking, today was the day that he was supposed to have his witnesses and he doesn't, then I think that may bar you from doing any-

thing else because today was the day for the hearing.

MR. GANGULI: That will be fine.

THE COURT: Okay.

MR. GANGULI: You Honor, can I be relieved from this?

. . . .

THE COURT: All right. Just come back in and once you've done what I'm telling you to do, then, yes, I'll take you off. But you need to have some closure to this. Okay. So I've got a ruling where I'm denying his post conviction. I forgot there was a possibility of him having some additional witnesses today. You don't have them. I'm finished.

(09/23/99 Tr. 2:2–24, 3:23–4:4, *id.*, at PageID 570–72.) The post-conviction court issued an order denying the petition on September 23, 1999. (*See* ECF No. 9–15 at PageID 483–87.)

On appeal, the Tennessee Court of Criminal Appeals vacated and remanded the matter for a new post-conviction hearing. *Moore v. State*, No. W1999–02125–CCA–R3–PC, 2001 WL 792612 (Tenn. Crim.App. July 13, 2001). In so holding, the Tennessee Court of Criminal Appeals stated

The state persuasively insists that an interview with the two witnesses would not establish an intervening cause of death defense in the absence of medical testimony. Thus, it is questionable whether petitioner will be able to establish prejudice. Certainly, there is strong evidence in the existing record to indicate that trial counsel's decision not to pursue an intervening cause defense was indeed a logical tactical decision. It may further be that had post-conviction counsel thoroughly investigated this defense, reviewed the hospital records and interviewed the witnesses requested by petitioner, it would be apparent that the intervening cause defense would have

been futile, or at least a defense understandingly and tactically rejected by trial counsel. However, deference to tactical choices applies only where the choices are informed ones based upon adequate preparation.

Of concern to this court is that, on the basis of the record before us, we are unable to conclude that post-conviction counsel investigated this defense in any way. No certification as required by Tenn. Sup.Ct. R. 28, § 6(C)(3) was filed by counsel indicating a thorough investigation of possible constitutional violations. It is undisputed that no attorney or investigator has ever interviewed these two witnesses. Post-conviction counsel had the names of the two witnesses as they were alleged in his amended petition and further identified by name in the testimony adduced at the first post-conviction hearing. Furthermore, there is no indication that post-conviction counsel examined any hospital records or did anything to investigate whether trial counsel's decision to forego the intervening cause defense was an informed one. Furthermore, if post-conviction counsel deliberately decided not to pursue this ground, it is not apparent from the record.

The petition was dismissed by the trial court after post-conviction counsel failed to put on any proof at the second hearing which was specifically set for that purpose. In its findings the post-conviction court expressly noted the failure of petitioner to offer evidence in support of his allegation regarding the intervening cause defense. If petitioner was at fault in tardily providing information to post-conviction counsel, as the post-conviction court apparently believed, we note that petitioner either was not present at the September 23rd hearing or had no opportunity to respond. We are not content to totally blame petitioner for this failure based upon the record before us.

We recognize that ineffective assistance of post-conviction counsel can provide no basis for relief. Nevertheless, counsel should meet the requirements of Tenn. Sup.Ct. R. 28, § 6(C). In this case we need not determine whether the failure of counsel to comply with all the requirements of Rule 28 itself justifies the granting of a new hearing. The trial court dismissed the petition because the *petitioner* did not have the witnesses present at the second hearing. Petitioner did not have the opportunity to be heard prior to the dismissal as to whether this was his fault. In light of the entire record, we believe a remand for a new post-conviction hearing is the appropriate remedy.

*Id.* at \*4–5 (footnote omitted) (citations omitted).

On remand, the post-conviction court issued an order on October 4, 2001, appointing Marty McAfee to represent Moore. (*See* ECF No. 9–18 at PageID 612.) A Third Amended Petition for Post–Conviction Relief was filed on October 31, 2005. (*Id.* at PageID 614–21.) An evidentiary hearing commenced on June 7, 2007. (*See* June 7, 2007, Hr'g Tr. ("06/07/07 Tr."), ECF No. 9–20.) A Fourth Amended Petition was filed on June 7, 2007. (*See* ECF No. 9–18 at PageID 622–33.) On November 2, 2007, the State filed its Response to the Fourth Amended Petition (*see id.* at PageID 635–44), and Moore filed a Reply on November 2, 2007 (*see id.* at PageID 645–47). The post-conviction court denied the petition on November 30, 2007 (*see id.* at PageID 655–61), and the Tennessee Court of Criminal Appeals affirmed, *Moore v. State*, No. W2008–00034–CCA–R3–PC, 2009 WL 1424186 (Tenn.Crim. App. May 20, 2009), *appeal denied* (Tenn. Oct. 19, 2009).

The Tennessee Court of Criminal Appeals summarized the evidence introduced at trial:

The [petitioner] does not deny that on March 10, 1992, he shot the victim, Daniel Miller, in the back outside of Cox's Grocery Store. The state called Johnnie Miller, the mother of the victim, to the stand, who testified that on the evening that her son was killed the [petitioner] came to her home looking for her son. She stated that the [petitioner] insisted that the victim had stolen a gun from him earlier in the day, and that if he did not return it to the [petitioner], the [petitioner] would kill Daniel Miller.

Kimberly Dobey, the sister of the victim, also testified that on the evening prior to the murder, the [petitioner] and two others showed up at the home which she shared with her mother and two brothers brandishing weapons and threatening to kill the victim if he did not return the [petitioner's] property to him that evening.

Dr. Jerry Francisco, medical examiner for Shelby County, testified that the [victim] was shot in the back to the left of his spine, and that the bullet penetrated his lung, and that the [victim] died from complications resulting from the gunshot wound approximately ten days after the [petitioner] shot the victim.

Morris Cox, the owner of the grocery store where the shooting occurred, testified that although he did not see the shooting, he was there the evening of the shooting and heard one gunshot. He testified that the victim was attempting to come into the grocery store when he was shot in the back. The shot to the victim's back caused the victim to fall halfway inside the grocery store and halfway out.

The brother of the victim, Bernard Miller, testified that he was at home with his mother and his sister when the [petitioner] and two others came to his home brandishing weapons and threatening to kill the victim if he did not return the [petitioner's] property that evening.

The jury heard from Keith Mosby, a close friend of the victim, who was at the scene of the shooting. Mr. Mosby testified that he saw the victim arguing with someone, and that he saw the [petitioner] turn around, grab the doorknob of the grocery store, and then Mr. Mosby testified that he heard one gunshot.

James Albert Jones testified that he saw the [petitioner] hit the victim in the face with the gun, which the [petitioner] later admitted to during the [petitioner's] direct testimony. Finally, the state called Ricky Davison to the stand. Mr. Davison was an officer on patrol on the evening of the shooting. He testified that he responded to a call from the victim's sister in which she complained that the [petitioner] and two others had shown up brandishing weapons.

The [petitioner] called two witnesses and testified himself as to the events of the evening of the shooting. The jury first heard from Johnny Elzey, a friend of the [petitioner], who testified that he was at the scene of the shooting and witnessed the argument between the victim and the [petitioner], and that he heard two distinct gunshots. Mr. Elzey also testified that after the [petitioner] shot the victim, the [petitioner] got back into Mr. Elzey's car, and the two of them drove away.

The next witness to testify on behalf of the defense was Terrance Flemmons, who subsequently revealed his true name as Willie Cooper. This witness testified that he was near the scene of the shooting when it occurred, and that he heard two gunshots as well. Further, he testified that he actually saw

the [petitioner] shoot the victim. He testified that he did not know the [petitioner] prior to being jailed in the same area of the Memphis County Jail in February of 1994.

Finally, the jury heard from the [petitioner]. The [petitioner] testified that earlier in the day the victim had been in a home where he frequented, and that he believed that the victim had stolen a gun from his home. The [petitioner] admitted that he did go to the home of the victim earlier in the day, but testified that he was not threatening and did not display a weapon. The [petitioner] testified that he and Mr. Elzey were driving past Cox's Grocery Store when he saw the victim and asked Mr. Elzey to stop the car. Whereupon, he proceeded to engage in an argument with the victim over the missing gun. He admitted that he hit the victim in the face with the weapon, but that shortly after that both he and the victim decided to walk away from the argument. The [petitioner] testified that as he turned his back on the victim and began to walk away he heard a gunshot and "instinctively turned and shot."

The state called one rebuttal witness. Michael Bynum testified that his nickname was "Hardface," and he denied being at the shooting. This was important because the [petitioner's] earlier witness, Terrance Flemmons, had testified that he had been standing on the street with several other men, including one with the nickname "Hardface."

*State v. Moore*, 1995 WL 555076, at *1–3 (alterations in original).

## B. Procedural History of Moore's § 2254 Petition

On October 26, 2009, Moore filed a pro se Petition pursuant to 28 U.S.C. § 2254 (ECF No. 1–4), and supporting legal memorandum (ECF No. 1–1). Petitioner paid the habeas filing fee. (ECF No. 2.) In an

Order issued November 5, 2009, the Court directed Respondent to file the state-court record and a response to the Petition. (ECF No. 3.) On January 20, 2010, Respondent filed portions of the state-court record (ECF No. 9) and, on January 21, 2010, he filed an Answer to Petition for Writ of Habeas Corpus (ECF No. 10).

The trial-court record, however, was not part of the record filed before this Court. In a footnote to the notice of filing of the state-court record, Respondent stated as follows:

> Respondent attests that the records of the petitioner's trial have been requested from the state court; however, Respondent was informed that the records had been checked out by appellate counsel and were never returned. Neither the Office of the Attorney General nor the state court has any additional record of the petitioner's trial other than that which has been filed with this Court.

(ECF No. 9 at 2 n. 1.)

On February 11, 2010, Petitioner filed a Motion for an Extension of Time noting that the state-court record was incomplete and asking for additional time to permit the record to be further developed. (ECF No. 11.) Petitioner filed a second Motion on February 11, 2010, entitled "Memorandum in Support of Rule 7 Motion to Expand the Record Under Rules Governing Section 2254 Cases in the United States District Courts," that attached various documents. (ECF No. 12.) In an Order issued April 14, 2010, the Court granted the Motion for an Extension of Time. (ECF No. 13.) Because the trial transcript was necessary to evaluate Petitioner's sufficiency-of-the-evidence claim, the Court directed Respondent to file a supplement to his Answer stating whether the transcripts could be obtained or transcribed. (*Id.* at 4–5.) The Order further directed that, "[i]f the missing portions of the state-court record cannot be located or

recreated, Respondent is further OR-DERED to file a supplement to his answer addressing the impact of the missing records on Petitioner's claims." (*Id.* at 5.) On July 8, 2010, Respondent filed the trial transcript (ECF Nos. 16–1 to –3) and advised the Court that the technical record was checked out by Petitioner's counsel and never returned (ECF No. 16 at 1). Petitioner did not file a reply.

## II. PETITIONER'S FEDERAL HABEAS CLAIMS

In his § 2254 Petition, Moore raises the following issues: (1) whether the evidence is insufficient to support Petitioner's conviction and as a result the trial court erred in denying Petitioner's motion to dismiss at the close of the State's proof; (2) whether the trial court erred in not allowing Petitioner to impeach a State's witness with the testimony of another witness; (3) whether trial counsel rendered ineffective assistance by failing to request valid jury instructions on the burden of proof; (4) whether trial counsel rendered ineffective assistance by failing to request jury instructions on lesser included offenses; (5) whether trial counsel rendered ineffective assistance by failing to object to the presence of a mannequin with a bullet hole in the back as unfairly prejudicial; (6) whether the trial court failed to follow the mandate of the Tennessee Court of Criminal Appeals; and (7) whether post-conviction counsel failed to follow the mandate rendered by the Tennessee Court of Criminal Appeals. (ECF No. 1–4 at 6.)

## III. THE LEGAL STANDARD

The statutory authority for federal courts to grant habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### A. Exhaustion, Procedural Default, and Waiver

 Twenty-eight U.S.C. §§ 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts. *See Cullen v. Pinholster,* —— U.S. ——, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). The petitioner must "fairly present"[2] each claim to all levels of state court review, up to and including the state's highest court on discretionary review, *Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy, *O'Sullivan v. Boerckel,* 526 U.S. 838, 847–48, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court in order to "be deemed to have exhausted all available state remedies." *Adams v. Holland,* 330 F.3d 398, 402 (6th Cir.2003) (quoting Tenn. Sup.Ct. R. 39) (internal quotation marks omitted); *see Smith v. Morgan,* 371 Fed.Appx. 575, 579 (6th Cir. 2010).

---

**2.** For a claim to be exhausted, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam). Nor is it enough to make a "general appeal" to a broad constitutional guarantee. *Gray v. Netherland,* 518 U.S. 152, 163, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996).

■ The procedural-default doctrine is related to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446, 452–53, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (noting the interplay between the exhaustion rule and the procedural-default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 87–88, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *see Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). If a claim has never been presented to the state courts, but a state-court remedy is no longer available, for example, when an applicable statute of limitations bars a claim, the claim is technically exhausted, but procedurally barred. *See Coleman*, 501 U.S. at 732, 111 S.Ct. 2546; *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir.2004) (noting that the procedural-default doctrine prevents circumvention of the exhaustion doctrine).

■ Under either scenario, a petitioner must show "cause" to excuse his failure to present the claim fairly and "actual prejudice" stemming from the constitutional violation or, alternatively, that a failure to review the claim will result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 321–22, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. The latter showing requires a petitioner to establish that a constitutional error has probably resulted in the conviction of a person who is actually innocent of the crime. *Schlup*, 513 U.S. at 321, 115 S.Ct. 851; *see House v. Bell*,

547 U.S. 518, 536–39, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006).

**B. Merits Review**

■ Section 2254(d) establishes the standard for addressing claims that have been adjudicated in state courts on the merits:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The petitioner carries the burden of proof for this "difficult to meet and highly deferential standard ... which demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 131 S.Ct. at 1398 (internal quotation marks omitted) (citations omitted).[3]

■ Review under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S.Ct. at 1398. A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or ... decides

---

**3.** The AEDPA standard creates "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's

determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[4] An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The state court's application of clearly established federal law must be "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. The writ may not issue merely because the habeas court, in its independent judgment, determines that the "state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (quoting *Williams*, 529 U.S. at 411, 120 S.Ct. 1495) (internal quotation marks omitted).

There is little case law addressing the definition of the "unreasonable determination of facts" standard in § 2254(d)(2). In *Rice v. Collins*, the Supreme Court explained that "[r]easonable minds reviewing the record might disagree" about the factual finding in question, "but on habeas review that does not suffice to supersede the trial court's [ ] determination." 546 U.S. 333, 341–42, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006); *see Wood v. Allen*, 558 U.S. 290, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010) (stating that a state-court factual determination is not "unreasonable merely because the federal habeas court would have reached a different conclusion"). Accordingly, a state-court adjudication will not be overturned on factual grounds unless objectively unreasonable in

light of the evidence presented in the state-court proceeding. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir.2010).

"Notwithstanding the presumption of correctness, the Supreme Court has explained that the standard of § 2254(d)(2) is 'demanding but not insatiable.'" *Harris v. Haeberlin*, 526 F.3d 903, 910 (6th Cir. 2008) (quoting *Miller–El v. Dretke*, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)). "Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.'" *Miller–El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

## IV. ANALYSIS OF PETITIONER'S CLAIMS

### A. The Alleged Insufficiency of the Evidence (Claim 1)

Moore argues that the evidence is insufficient to sustain his conviction for premeditated first-degree murder. (ECF No. 1–4 at 6.) Moore challenged the sufficiency of the evidence on direct appeal. (*See* Appellant's Br., ECF No. 9–1, at 2, 12–15, 18–19.)

The Tennessee Court of Criminal Appeals rejected Petitioner's claim on the merits, stating as follows:

The appellant first contends that the evidence was insufficient for the jury to conclude that he was guilty of first-degree murder. Tennessee Code Annotated defines first-degree murder, in part, as "an intentional, premeditated, and deliberate killing of another." Tennessee Code Annotated section 39–13–201 defines a deliberate act as one performed with a cool purpose and a premeditated act as one done [ ] "after the exercise of reflection and judgment."

4. The "contrary to" standard does not require citation of Supreme Court cases "so long as neither the reasoning nor the result of the

state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We do not reweigh or reevaluate the evidence and are required to afford the state the strongest legitimate view of the proof contained in the record, as well as all reasonable and legitimate inferences which may be drawn therefrom.
. . . .

The appellant's claim is that each of the three witnesses who testified that the appellant had earlier in the evening threatened to kill the victim were impeached in some fashion by the defense on cross-examination. Therefore, the appellant concludes that their testimony cannot support a finding of premeditation and deliberation. We disagree.

Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as the factual issues raised by the evidence, are resolved by the trier of fact, not this Court. The jury obviously found that the fairly minor inconsistencies in the testimony of the three members of the victim's family, who all testified that the appellant had advised them that he would kill the victim if he did not get his gun back, did not make those witnesses incredible. If the jury believed the testimony of any one of those three witnesses concerning the appellant's statement that he would kill the victim, the finding of premeditation and deliberation was proper.

Accordingly, we find that the evidence was more than sufficient to support the conviction of murder in the first degree. Because we find that the evidence was sufficient to support the conviction, we obviously further hold that the trial court did not err by refusing to grant the appellant's motion to dismiss at the close of the state's proof based on the appellant's assertion that the state had not met its burden of proof. Additionally, we note that the record reveals that the appellant did not renew his motion to dismiss after the close of all proof; therefore, this issue has been waived on appeal.

*State v. Moore,* 1995 WL 555076, at *1, *3 (internal quotation marks omitted) (citations omitted).

In *Jackson v. Virginia,* the Supreme Court held that, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt." 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard requires a federal district court to examine the evidence in the light most favorable to the State. *Id.* at 326, 99 S.Ct. 2781.

■ Moore makes no argument that the decision of the Tennessee Court of Criminal Appeals was contrary to, or an unreasonable application of, clearly established federal law, 28 U.S.C. § 2254(d)(1), or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding, 28 U.S.C. § 2254(d)(2). Instead, the sufficiency-of-the-evidence claim raised in the Petition is entirely different from the issue Moore exhausted in state court. In the Petition, Moore complains that his trial counsel did not investigate the incident in which Cheryl Johnson and Lisa Williams fought each other in the intensive care unit and did not pursue a theory that "this incident contributed ... to complications which ultimately caused the victim's

death." (ECF No. 1–4 at 8; *see also id.* at 6–10.) Moore is arguing, in effect, that the evidence presented at trial is insufficient to establish that the gunshot wound he inflicted caused the victim's death.

Moore's theory that the gunshot wound was not the cause of the victim's death was not presented on direct appeal (*see* Appellant's Br., ECF No. 9–1) and, therefore, has not been properly exhausted. *See Pinholster,* 131 S.Ct. at 1398. Because no further avenue exists for exhausting the claim, it ordinarily would be barred by procedural default. *See Coleman,* 501 U.S. at 732, 111 S.Ct. 2546.

■■■■ "[P]rocedural default is normally [an affirmative] defense that the State is obligated to raise and preserv[e] if it is not to lose the right to assert the defense thereafter." *Trest v. Cain,* 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997) (second alteration in original) (quoting *Gray v. Netherland,* 518 U.S. 152, 166, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996)) (internal quotation marks omitted). Respondent's Answer overlooks the substance of the argument Moore is actually making and, instead, assumes that Moore is raising the same sufficiency of the evidence claim he exhausted in state court. (*See* ECF No. 10 at 20–26.) Respondent, therefore, has lost the right to assert that Moore's sufficiency of the evidence claim is procedurally defaulted.

■■■■ Federal courts may raise a petitioner's procedural default sua sponte. *See Mason v. Brunsman,* 483 Fed.Appx. 122, 129 (6th Cir.2012), *cert. denied,* —— U.S. ——, 133 S.Ct. 447, 184 L.Ed.2d 273 (2012); *Clinkscale v. Carter,* 375 F.3d 430, 436–37 (6th Cir.2004). Where a court proposes to decide an issue on a ground that was not previously raised, it is appropriate to give the parties a chance to respond. *See Trest,* 522 U.S. at 92, 118 S.Ct. 478; *see also Day v. McDonough,* 547 U.S. 198, 209–10, 126 S.Ct. 1675, 164 L.Ed.2d 376

(2006). Because it is clear that Moore is not entitled to relief on this claim, the Court declines to raise the affirmative defense of procedural default sua sponte.

■■■■ Because no state court has reviewed the merits of Moore's new sufficiency-of-the-evidence claim, "the deferential standard of review set forth in section 2254(d) is inapplicable." *Clinkscale,* 375 F.3d at 436. Issues that have not been addressed by a state court are reviewed de novo, in light of the totality of the evidence. *Id.*

■■■■ "In order to sustain a criminal conviction for first degree murder, the evidence must establish that the defendant's actions caused the victim's death." *State v. Richardson,* 995 S.W.2d 119, 125 (Tenn. Crim.App.1998).

> Generally, this is established by showing that the victim's death was the natural and probable result of the defendant's unlawful act. Our court has held that in order to convict a defendant, it is not necessary that the defendant's act be the sole cause of death nor the most immediate cause of death. It is only necessary that the defendant unlawfully contributed to the death of the deceased.

*Id.* (citations omitted)(internal quotation marks omitted); *see also State v. Thomas,* 158 S.W.3d 361, 389 (Tenn.2005).

■■■■ The evidence produced at trial is more than sufficient for a reasonable jury to conclude that Moore's actions caused the victim's death. Doctor Jerry Francisco, the medical examiner, testified that the victim died of a "gunshot wound to the chest." (Trial Tr. 182:24–183:1, ECF No. 16–2, at PageID 1408–09.) Doctor Francisco explained that

> [t]he mechanism by which it produces death is that it damages the lungs of the body because of blood loss and the forces of the bullet passing through, and

that in turn makes the lungs more susceptible to the bacteria that are normally present in the environment so that they are not as capable of fighting the infection as they would be before. As a consequence of that he developed [ ] pneumonia, and it was from the pneumonia that he died.

(Trial Tr. 183:3–11, *id.*, at PageID 1409.) The pneumonia was caused "[b]y the shock and trauma associated with the gunshot wound to the chest." (Trial Tr. 183:12–14, *id.*, at PageID 1409.)

Moore's theory that the gunshot wound was not the cause of the victim's death because a third party exposed him to pneumonia bacteria is legally meritless. Tennessee courts have upheld homicide convictions where the victim develops pneumonia after being injured by the defendant. In *State v. Roberson,* the Tennessee Court of Criminal Appeals affirmed a defendant's conviction for involuntary manslaughter where the victim died of pneumonia after being severely beaten by the defendant. 644 S.W.2d 696 (Tenn. Crim.App.1982). The Tennessee Court of Criminal Appeals explained:

Dr. Hill testified that the deceased died from "bronchial pneumonia," but we conclude that the evidence is sufficient to show that the deceased's susceptibility to this malady and his inability to fight it were related to the severe beating he received from the defendant. Dr. Hill stated that the victim's pneumonia progressed because he would not cough, and Dr. Hill attributed his failure to cough to his impaired mental condition and added that the victim "just didn't have the fight to take care of the pneumonia in his lungs." Further, Dr. Hill stated that the victim "may not have ever got pneumonia if he hadn't been beaten on." Obviously, the victim's weakened condition brought about by the defendant's wrongful acts inhibited the victim's ability to ward off the pneumonia.

One who unlawfully inflicts a dangerous wound upon another is held for the consequences flowing from such injury, whether the sequence be direct or through the operation of intermediate agencies dependent upon and arising out of the original cause. To convict the defendant, it is not necessary that his act or failure to act be the sole cause, nor the most immediate cause of death. It is only necessary that the defendant unlawfully contributed to the death of the deceased.

*Id.* at 698 (citations omitted); *see also State v. Barnes,* 703 S.W.2d 611, 615 (Tenn.1986).

Because the evidence at trial establishes that Moore's actions were the cause of the victim's death, the Court finds that Moore's sufficiency-of-the-evidence claim is meritless.

Moore also appears to contend that his attorneys were ineffective in failing properly to develop the causation issue. This issue was addressed in the first and second post-conviction proceedings but was not included in Moore's brief to the Tennessee Court of Criminal Appeals on the second post-conviction appeal. (*See* Appellant's Br., ECF No. 9–10, at 2.) Therefore, the claim was not properly exhausted in state court and, because no further means for exhausting the claim exist, it appears to be barred by procedural default. Respondent, however, did not address this issue and, thus, did not assert the affirmative defense of procedural default.

This claim is meritless. A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate defi-

cient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. In considering a claim of ineffective assistance of counsel, courts "must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington v. Richter,* —— U.S. ——, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052) (internal quotation marks omitted). "The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052) (internal quotation marks omitted).

Furthermore, a petitioner must demonstrate that counsel's deficient performance resulted in prejudice. *Id.* To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.[5] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Richter,* 131 S.Ct. at 787 (quoting *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052). Counsel's deficient performance "must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 787–88 (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052).

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010).

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care.... Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.... The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

*Richter,* 131 S.Ct. at 788 (citations omitted).

At the first post-conviction hearing, Moore testified that he provided his original trial counsel, Carolyn Watkins, with the names of Cheryl Johnson and Gwendolyn Wright. (06/24/99 Tr. 6:15–21, ECF No. 9–16, at PageID 514.) According to Moore,

initially she told me that she would investigate and she would look into the matter at the hospital and investigate and interview these witnesses. And for about six months I believed her. And, you know, I just said, well, I'm going to let my lawyer handle things.

And then when it was time for me to go to trial in 1993, I talked to her in the back of the courtroom. And she expressed to me that, you know, she couldn't subpoena those witnesses and

---

**5.** "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. If a reviewing court finds that the defendant was not prejudiced, then it need not determine whether counsel's performance was deficient. *Id.*

give me the defense that I wanted because it was a civil matter.

And I told her that civil matter is the reason I got this criminal charge, I can't understand why she can't interview those witnesses, you know, to see, you know, did they have anything favorable to add, you know, for me.

(06/24/99 Tr. 7:1–16, *id.*, at PageID 515.) The day the case was supposed to be tried, Moore told the judge that he was dissatisfied with Watkins. (06/24/99 Tr. 7:24–8:3, *id.*, at PageID 515–16.) Moore told the judge that "Ms. Watkins had told me that she couldn't interview those witnesses because this was a civil matter, she couldn't go check the hospital records because it was a civil matter." (06/24/99 Tr. 8:4–7, *id.*, at PageID 516.) Moore also told the judge that he had sent a letter to the Board of Professional Responsibility. (06/24/99 Tr. 8:8–10, *id.*, at PageID 516.) Watkins was allowed to withdraw and Paul E. Lewis was appointed to represent Moore. (06/24/99 Tr. 7:17–8:14, *id.*, at PageID 515–16.)

Moore testified that he "was somewhat involved with the sister of the victim," who told him "some things that happened at the hospital." (06/24/99 Tr. 9:5–6, 8–9, *id.*, at PageID 517.) Moore elaborated:

Well, I was told that two females had went to visit Danny while he was in the intensive care unit-two non-family-member females. And they got into an argument and a fight in his room and fell on him.

Q. And they fell on him?

A. And hospital security had to come remove those females. And the nurses had to come in. And they discovered that his electrocardiogram had went off and his lung had collapsed. And then he was put on a life support system.

(06/24/99 Tr. 9:13–22, *id.*, at PageID 517.) Moore admitted that he had no personal knowledge of these events and no medical training. (06/24/99 Tr. 9:23–10:7, *id.*, at PageID 517–18.)

Moore provided this information as well as the names and addresses of the witnesses to Lewis, but Moore contends that "it wasn't investigated because it was never-none of this evidence was actually presented at trial. And the witnesses were never subpoenaed or interviewed." (06/24/99 Tr. 9:8–10:1, *id.*, at PageID 518–19.)

On cross-examination, Moore acknowledged that the autopsy report said that the victim died of a gunshot wound to the chest. (06/24/99 Tr. 14:18–15:16, *id.*, at PageID 522–23.) Moore explained that "I was trying to get a[n] expert witness to tell the Court and the jury how a post-trauma incident could have contributed to this man catching pneumonia, which subsequently led to his death." (06/24/99 Tr. 15:6–9, *id.*, at PageID 523.) Moore also testified that the trial judge told him that he "had the right to have all of any medical records that could have been favorable to me" presented at trial, but that counsel did not "even look into the matter, regardless of what the autopsy said." (06/24/99 Tr. 18:4–8, *id.*, at PageID 526.)

Watkins testified that Moore discussed his theory about the hospital altercation with her. (06/24/99 Tr. 26:12–14, *id.*, at PageID 534.) Watkins testified:

And Mr. Coffee and I copied those portions of the law that explained to Mr. Moore about intervening causes in homicide cases and superceding intervening causes in homicide cases.

And our basic response to him was, we did not feel that was a good trial strategy. We told him that had it not been for the gunshot wound that he inflicted upon the victim then he would not have been in the hospital and therefore it would not have been this subsequent pneumonia or whatever resulted

in the cause of death even though, of course, the official cause of death was a gunshot wound to the back, if I recall correctly.

We told Mr. Moore we thought a better defense at trial would be a voluntary homicide or a self-defense argument. And those were the strategies we intended to utilize.

(06/24/99 Tr. 26:14–27:4, *id.*, at PageID 534–35.) Watkins testified that when they first showed him the law, Moore was okay with the decision to forego that strategy. (06/24/99 Tr. 27:5–7, *id.*, at PageID 535.) It was only later that the parties disagreed, and Moore "filed the complaint and then persisted with these intervening causes." (06/24/99 Tr. 27:7–9, *id.*, at PageID 535.)

Watkins recalled that Moore gave her the names of Cheryl Johnson and Lisa Williams, who "were the young ladies that supposedly caused or supposedly had the altercation at the hospital." (06/24/99 Tr. 28:11–16, *id.*, at PageID 536.) She admitted that, "considering what Mr. Coffee and I told Mr. Moore, it's possible that I did not talk to them." (06/24/99 Tr. 28:19–21, *id.*, at PageID 536.) Watkins also testified that she did not believe an expert was needed. (06/24/99 Tr. 29:5–10, *id.*, at PageID 537.)

Lewis testified at the first post-conviction hearing that he discussed with Moore his theory of the hospital altercation. (06/24/99 Tr. 38:21–24, *id.*, at PageID 546.) According to Lewis:

[Moore] wanted the defense to be that while, in fact, the decedent was shot that the gunshot did not kill the decedent, that the decedent died of natural causes being pneumonia, which Mr. Moore thinks was caused by two girls fighting over the decedent while he was in a hospital bed.

There was no indication of that in the medical records. And then eventually when Dr. Francisco–I talked to him before the trial. He stated that whatever occurred after the gunshot wound was, in fact, caused by the gunshot wound.

There was some pneumonia present, but that was not the cause of death. It was listed on the autopsy but three or four down the list. Dr. Francisco's opinion was it was certainly caused by a gunshot.

And I explained to Mr. Moore that the intervening cause whether it was pneumonia or suffocation or tubes being pulled out, regardless of what it was, if the medical report was that it was all caused by the gunshot then that was going to be a difficult sale to the jury.

I didn't want to come into a courtroom and blame a deceased for two women fighting over him when he was there because of the gunshot. I just didn't think that that would play very well when there was—

Q. You decided not to pursue that as your strategy; is that right?

A. Yes—well, I discussed it with Mr. Moore and told him I didn't want to do that and told him why. And I can't say that he disagreed. I can't say that he agreed. But it was understood that we were not going to put those people on the witness stand, whoever they might be, to tell us about fighting over a young boy who eventually died.

(06/24/99 Tr. 39:2–40:9, *id.*, at PageID 547–48.) Lewis admitted that he did not interview Cheryl Johnson or Lisa Williams. (06/24/99 Tr. 40:16–18, *id.*, at PageID 548.)

On cross-examination, Lewis testified that he did legal research on "the actual cause of death being the gunshot or effects of the gunshot." (06/24/99 Tr. 46:21–22, *id.*, at PageID 554.) According to Lewis, Moore "wasn't sure [the hospital altercation] happened. He told me that someone had told him it happened. Obviously, he

didn't see it. But he believed it to have happened. And I don't have any reason to believe it didn't happen." (06/24/99 Tr. 51:16–19, *id.*, at PageID 559.)

At the second post-conviction hearing, Moore's testimony on direct examination regarding the intervening cause issue was similar to his prior testimony, except that he also recalled that his nephew, Steve Moore, Jr., and Kimberly Dobey, the victim's sister, told him there had been an altercation at the hospital. (06/07/07 Tr. 13:22–15:15, ECF No. 9–20, at PageID 878–80.) Lewis promised he would speak to these individuals but did not do so. (06/07/07 Tr. 15:16–16:3, *id.*, at PageID 880–81.) On cross-examination, Moore stated that Lewis "made it perfectly clear that he had no intentions on bringing two young ladies into the courtroom stating that some man died because they were fighting in the hospital room. He made that perfectly clear to me." (06/07/07 Tr. 45:20–24, *id.*, at PageID 910.)

Moore testified on cross-examination that he did not know either of the girls supposedly involved in the altercation. (06/07/07 Tr. 56:7–9, *id.*, at PageID 921.) According to Moore, the victim's sister told him that "the Med killed my bother." (06/07/07 Tr. 56:12–14, *id.*, at PageID 921.) The sister told Moore that the hospital "had called the family and told [them] that Danny was going to be all right and then a couple of days later called back saying he's fixing to die." (06/07/07 Tr. 56:16–19, *id.*, at PageID 921.) Moore said, "So after that people were calling my family. Telling my family that I shouldn't be charged with first degree murder because of what happened at the hospital." (06/07/07 Tr. 56:20–23, *id.*, at PageID 921.) Moore stated that he passed the information on to Watkins, but she did not want to investigate it. (06/07/07 Tr. 56:23–57:3, *id.*, at PageID 921–22.)

On redirect, post-conviction counsel testified regarding the steps he took to investigate the intervening-cause issue:

Q (BY MR. McAFEE). Mr. Moore, we have spoken at great length about this intervening cause stuff; right?

A. Right. Yes, sir.

Q. And I've made clear to you that I have demanded and paid for the medical records for Mr. Miller?

A. Yes.

Q. I made clear to you that I subpoenaed any incident report regarding an incident like that and that I was told there isn't any incident report; right?

A. Yes.

Q. And that I've tried to find these witnesses but haven't been able to find them?

A. Yes.

(06/07/07 Tr. 64:21–65:9, *id.*, at PageID 929–30.)

On recross-examination, Moore acknowledged that the medical examiner testified that the victim died from a gunshot wound to the chest. (06/07/07 Tr. 67:16–19, *id.*, at PageID 932.)

At the second post-conviction hearing, Lewis testified that he had been practicing law for "[t]hirty-something years." (06/07/07 Tr. 71:24–72:1, *id.*, at PageID 936–37.) He recalled that he represented Moore, and he testified that "I have some independent recollections ... that seem to fade in and out because of the time." (06/07/07 Tr. 72:10, 12, *id.*, at PageID 937.) His file was destroyed some time after the first post-conviction hearing. (06/07/07 Tr. 72:14–19, *id.*, at PageID 937.)

Lewis recalled discussing the intervening-cause issue with Moore. (06/07/07 Tr. 77:15–21, *id.*, at PageID 942.) Lewis remembered that

Mr. Moore advised me that he had learned through someone that during visitation at the hospital that two girls had gotten into a fight literally over the victim. And when I say over, I was lead to believe that one girl was standing over the hospital bed on one side and another girl was standing over the hospital bed on the other side and they were fighting. And that Mr. Moore believed that that caused the defendant's— the decedents death as oppose to the gunshot. He felt it was pneumonia by fighting I think was the way he was describing it to me as opposed to death by gunshot.

(06/07/07 Tr. 77:24–78:9, *id.*, at PageID 942–43.)

Lewis was asked whether Moore wanted to present that evidence during trial, and he stated, "No. What he wanted me to do was to be aware that that was a possibility and to use that to cross-examine the medical examiner to get him to admit that that fight, however it occurred, could have been the cause of death as opposed to the gunshot." (06/07/07 Tr. 78:20–24, *id.*, at PageID 943.) Lewis elaborated:

I asked him who the women were and he didn't actually give me names but he said he didn't want them to testify anyway or that they were not going to testify anyway. He simply wanted me to be aware of that and to see if I could get the medical examiner to agree that that fight could had caused the death by pneumonia as opposed to a gunshot wound. And without, of course, without those people, because I told him without the women available we wouldn't get that to the jury anyway, they'd have to testify and he didn't want them to testify.

(06/07/07 Tr. 79:4–14, *id.*, at PageID 944.) Lewis discussed the issue with Moore "[s]everal" times, including how the evidence would have to be presented at trial. (06/07/07 Tr. 79:15–20, *id.*, at PageID 944.)

Lewis did not recall whether he raised the issue in his cross-examination of the medical examiner. (06/07/07 Tr. 79:21–80:1, *id.*, at PageID 944–45.) He did not believe he had a good-faith basis to raise the issue because, "in my opinion, it would have taken, first, a factual witness to tell us what happened; and then it would take a medical proof to provide causation. But without the people involved[,] Mr. Moore was simply telling me that he had heard it from someone that it had happened." (06/07/07 Tr. 80:9–17, *id.*, at PageID 945.) Lewis also stated that he "[didn't] recall there being anything in the autopsy or the medical records to substantiate that anything had happened in the hospital out of the ordinary. No nurses' notes, nothing that would had indicated that." (06/07/07 Tr. 80:1–5, *id.*, at PageID 945.)

Lewis recalled that he did speak to Steve Moore, who "might have been an employee at the Criminal Court Clerk's Office somehow related to Mr. Moore." (06/07/07 Tr. 80:18–24, *id.*, at PageID 945.) Steve Moore "said he really didn't know much about it other than what he'd been told by family." (06/07/07 Tr. 80:25–81:1, *id.*, at PageID 945–46.)

The cross-examination of Lewis continued when the second post-conviction hearing resumed on September 14, 2007. (Sept. 14, 2007 Hr'g Tr. ("9/14/07 Tr.") 5:9–13, ECF No. 9–21, at PageID 964.) Lewis was asked what information Moore had given him about the witnesses to the intervening-cause issue, and he said, "I remember him telling me names. I'm not sure about addresses. I do remember the conversation that he wanted me to talk to them but he didn't want to use them as witnesses." (9/14/07 Tr. 13:2–9, *id.*, at PageID 972.) On redirect, Lewis stated that "Mr. Moore did not want to bring them to

trial." (9/14/07 Tr. 51-21–22, *id.*, at PageID 1010.) He also testified that he "remember[ed] talking to the medical examiner about that possibility and then also talking to a doctor friend of mine because it's something I had never heard of. And there was … no security report of it from the hospital about a fight." (9/14/07 Tr. 52:4–9, *id.*, at PageID 1011.) Lewis concluded that

> Mr. Moore wasn't there. Mr. Moore was telling me that somebody had told him that had happened and there was just nothing to substantiate it. And, again, the trial tactic of self-defense would not lend itself very well to telling the jury that somebody else was responsible for it, particularly if you had no proof.

(9/14/07 Tr. 52:13–18, *id.*, at PageID 1011.)

On recross-examination, Lewis was asked whether he went to the hospital to investigate whether there had been security reports or incident reports about a fight over the victim, and he responded that he "[didn't] recall physically going to the hospital. I recall either a telephone [conversation] or a letter but I never went to the hospital." (9/14/07 Tr. 57:4–10, *id.*, at PageID 1016.) He also testified that he "was either told or learned somehow that there wasn't [a security report]. That was all." (9/14/07 Tr. 57:13–14, *id.*, at PageID 1016.)

 Under de novo review, Moore cannot establish either deficient performance or prejudice arising from counsel's failure to pursue the intervening cause issue at trial. Trial counsel could not find any evidence that there was an altercation in the victim's hospital room. No mention was made in the victim's medical records, and the hospital had no incident report or security report reflecting such an incident. Lewis recalled that Moore did not want the women involved to testify, and Moore recalled that Lewis did not want to call them as witnesses and essentially blame

them for the victim's death. In either case, Lewis had no good-faith basis to raise the intervening cause issue in his cross-examination of the medical examiner without evidence that the alleged incident actually occurred. Moreover, Lewis also interviewed the medical examiner before trial and discovered that his testimony on the intervening cause issue would not have been favorable. Having done all that, Moore decided that the trial strategy would be self defense. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. Finally, as previously discussed, Moore cannot establish prejudice because the law in Tennessee is clear that a defendant can be convicted of causing a person's death where his unlawful actions contributed to the death of the deceased. *See supra* pp. 839–40. There is no question that, in the instant case, that standard has been satisfied.

The Court finds that the first claim is without merit. This claim is hereby DISMISSED.

## B. The Alleged Limitation on Cross Examination of a State Witness (Claim 2)

Moore contends that the trial court erred in not allowing him to impeach a State's witness with the testimony of another witness. (*See* ECF No. 1–4 at 10–11; ECF No. 1–3 at 7–8.) The factual basis for this issue is as follows:

> [T]he trial court erred and abused its discretion when it prohibited defense witness (Memphis Police Officer, R.D. Cummings) from testifying about a prior pre-trial statement. Officer Cummings, the investigating officer over the crime scene, took a statement from state witness Morris Cox. Cox provided a state-

ment the night of the incident, stating that he did not see or hear the shooting but saw the victim fall in the doorway of his store. Cox's testimony was diametrically different when he testified that he heard one gunshot.

The trial court erred in not allowing the defense to present credible impeachment evidence in the form of Officer Cummings' testimony. During direct-examination by the State, Cox was asked to tell what he knew about the shooting and his testimony was that he heard one gunshot. The State opened the door for the impeachment of Cox's testimony when they asked Cox how many shots he had heard when Cox had already given a statement to Officer Cummings.

The Petitioner avers that during a "jury out" hearing, Officer Cummings provided testimony that Cox told him that he did not see or hear the shooting. The foundation was laid for the impeachment of Cox's testimony when the State solicited testimony from this witness. The trial court erred when it denied Officer Cummings from impeaching a state witness with [his] prior inconsistent statement.

(ECF No. 1–4 at 10–11.)

Moore raised this issue on direct appeal, and the Tennessee Court of Criminal Appeals addressed it on the merits, stating as follows:

The appellant next complains that the trial court abused its discretion when it prohibited a defense witness from testifying about a prior out-of-court statement made by a state's witness. The appellant attempted to put Memphis police officer, R.D. Cummings, on the stand in order to impeach the testimony of Mr. Morris Cox. The defendant made an offer of proof in which Officer Cummings' testimony would have been that Mr. Cox told him on the night of the

shooting that he did not see or hear the shooting but did see the victim fall in his doorway. The state objected to this testimony on grounds that the appellant had failed to lay the proper foundation pursuant to Tennessee Rule of Evidence 613, which deals with the admissibility of extrinsic evidence used to impeach a witness. During the state's case Mr. Cox testified that he heard one gunshot.

Rule 613 of the Tennessee Rules of Evidence provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same, and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interest of justice otherwise require." The appellant failed to confront the witness with the substance of his prior inconsistent statement. Therefore, the trial court correctly found that the proper foundation had not been laid. That is, the witness had not had an opportunity to explain or deny the statement which the officer attributed to him. The appellant contends that the interests of justice require that the trial court allow this testimony apparently because the affect of having the officer testify to the statement would have been to impeach Mr. Cox and would have enhanced the appellant's position of self-defense. We cannot agree. Because the appellant failed to ask the witness about the statement, this Court cannot know whether or not the statement would have contradicted Mr. Cox's testimony on the stand. The rule presupposes that it is possible for a witness to explain an apparent contradiction in a way which makes clear that there is no contradiction. This Court cannot tell whether or not the witness would have been able to do so, and the appellant has provided no proof that the witness would not have

been able to explain the apparent contradiction in his prior statement to the police officer and his statement on the witness stand at trial. Additionally, we find that even if the jury had heard that Mr. Cox told the police officer that he did not hear any gunshots would not have enhanced the appellant's position of self-defense. Only a statement attributed to a state's witness in which it was said that a witness heard two shots would the appellant's position of self-defense be enhanced. Accordingly, we find that the appellant failed to comply with the requirements of Rule 613, and the interests of justice do not require a waiver of these requirements. Accordingly, this issue is without merit.

*State v. Moore,* 1995 WL 555076, at *3 (alterations in original).

 Respondent contends that this issue is barred by procedural default because it was presented to the state courts solely as a violation of Tennessee Rule of Evidence 613. (ECF No. 10 at 26–27.) Although Respondent is correct that Moore only exhausted a state-law claim (ECF No. 9–1 at 2, 16–17), nothing in Moore's § 2254 Petition and supporting memorandum indicate that he intends to raise a federal constitutional claim. (*See* ECF No. 1–3; ECF No. 1–4.) Instead, it appears that Moore intends to present the same claim he exhausted in state court.

 A claim that the trial court erred, and the Tennessee Court of Criminal Appeals misapplied Tennessee law in evaluating that error, cannot be addressed in a § 2254 petition because it does not arise under federal law. *See* 28 U.S.C. § 2254(a). Error in the application of state law is not cognizable in a federal habeas proceeding. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions.").

Because this issue is not properly addressed in a § 2254 petition, the Court finds that the second claim is without merit. This claim is hereby DISMISSED.

## C. Trial Counsel's Alleged Failure to Request Jury Instructions on the Burden of Proof (Claim 3)

Moore contends that trial counsel rendered ineffective assistance by failing to request valid jury instructions on the burden of proof. (ECF No. 1–3 at 10; ECF No. 1–4 at 11–13.) Moore argues that the jury was not instructed that the burden of proof always remains on the State. (ECF No. 1–4 at 11.)

Moore raised this issue in the second post-conviction proceeding, and the testimony on that issue at the post-conviction hearing was as follows:

The petitioner testified that although the state discussed its burden of proof during *voir dire,* he did not recall whether or not the trial court instructed the jury as to the burden of proof. The petitioner stated that he reviewed the jury instructions in his case and did not see instructions on the burden of proof. The petitioner stated that he could not recall whether or not trial counsel objected to the court's failure to instruct the jury on the burden of proof. He further stated that he did not recall trial counsel raising the issue in the motion for new trial or on direct appeal. The petitioner acknowledged that trial counsel discussed the burden of proof in his opening statements to the jury.

. . . .

... Counsel testified that he did not notice any omission of burden of proof

language in the jury instruction given at the petitioner's trial.

*Moore v. State*, 2009 WL 1424186, at *5–6.

The Tennessee Court of Criminal Appeals rejected this issue on the merits, stating as follows:

> In the instant appeal, the petitioner has raised the single issue of ineffective assistance of counsel. The petitioner claims that trial counsel's representation was deficient because: (1) he did not request a jury instruction regarding the state's burden of proof, object to the court's failure to instruct on burden of proof, and did not raise the issue on appeal; (2) he failed to request jury instructions on the lesser-included offenses of reckless homicide and criminally negligent homicide and did not raise the issue on appeal; (3) he failed to object to the presence of a mannequin in the courtroom.
>
> To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. A fair assessment of counsel's performance, requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. If either element of ineffective assistance of counsel has not been established, a court need not address the other element.
>
> As noted, the petitioner complains that his trial counsel did not object to the court's failure to instruct the jury on the burden of proof and did not raise the issue on direct appeal. Specifically, the petitioner submits that no jury instruction was proffered making clear that the state had the burden of proving his guilt beyond a reasonable doubt. In denying relief, the post conviction court found the following:
>
>> Petitioner asserts that counsel was ineffective for failing to request jury instructions on burden of proof, however, the trial court explained burden of proof to the jury in both its written and oral instructions to the jury. Petitioner failed to overcome the presumption that trial counsel's actions were within the wide range of reasonable professional assistance.
>>
>> Petitioner avers that counsel failed to properly raise objections.... It is ... a general rule that in evaluating claims of error as to jury instruction, the instruction must be reviewed in its entirety and read as a whole. Petitioner's argument focuses solely on the jury instructions read to the jury by the trial judge on May 2 and 3, 1994, however, in the trial judge's May 5, 1994 charge of law, the judge instructed the jury several times that the State had the burden of proving

beyond a reasonable doubt the elements of the offenses for which the Petitioner was charged. In Petitioner's trial, the jury was properly instructed of the State's burden of proof, therefore, Petitioner did not show that counsel's actions fell below an objective standard of reasonableness....

Our review of the record supports the post-conviction court's findings. The jury instructions included in the record reflect that the trial court referred to the state's burden of proof when discussing: the elements of the offenses, the identity of the petitioner as the perpetrator of the charged offenses, the state's burden in showing that the petitioner did not act in self-defense. In addition, the trial court instructed the jury on the presumption of innocence and reasonable doubt as follows:

You enter upon this investigation with the presumption that the defendant is not guilty of any crime and this presumption stands as a witness for him until it is rebutted and overturned by competent and credibly [sic] proof. It is, therefore, incumbent upon the state, before they can—before you can convict the defendant to establish to your satisfaction beyond a reasonable doubt that the crime charged in the indictment has been committed, and that the same was committed within the County of Shelby and the State of Tennessee before the finding of this indictment, and that the defendant at the bar committed t[h]e crime in such manner that would make him guilty under the law heretofore defined and explained to you.

Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability after such investigation, to let the mind rest easily upon the certainty of guilt. Reasonable doubt does not mean a doubt that may arise from possibility.

Absolute certainty of guilt is not demanded by the law to convict of any criminal charge but moral certainty is required, and this certainty is required as to every proposition of proof requisite to constitute the offense.

The trial court's instruction was a correct statement of law regarding the presumption of innocence and reasonable doubt. It is clear from the record that the jury instruction read in its entirety did not mislead the jury as to the state's burden of proving the petitioner's guilt beyond a reasonable doubt. As such, the petitioner has neither proven that counsel was deficient in failing to request additional particularized instruction on the state's burden of proof nor demonstrated that the outcome of the trial would have been different had additional instruction been given.

Likewise, the petitioner has not proven that counsel was ineffective in failing to raise the issue on appeal. Counsel is not constitutionally required to raise every conceivable issue on appeal, and the determination of which issues to raise is generally within counsel's sound discretion. If an issue has no merit or is weak, counsel's performance will not be deficient for failure to raise it, and the petitioner will have suffered no prejudice. As set forth, the petitioner did not prove counsel was ineffective in raising this issue at trial; therefore, it follows that counsel was not ineffective in failing to raise the issue on appeal. The petitioner is not entitled to relief.

*Id.* at *6–8 (citations omitted) (internal quotation marks omitted).

 The standards for reviewing a claim of ineffective assistance of counsel under *Strickland* were previously described. *See supra* pp. 840–42. When an ineffective-assistance claim is reviewed under § 2254(d), the review is "doubly deferential." *Knowles v. Mirzayance,* 556 U.S.

111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009).

Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter,* 131 S.Ct. at 788.

Because the Petition does not address the standards for evaluating habeas claims on the merits, it is unclear whether Moore contends that the decision of the Tennessee Court of Criminal Appeals on this issue was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or whether it "was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding," 28 U.S.C. § 2254(d)(2).

Moore has not argued that the decision of the Tennessee Court of Criminal Appeals was contrary to *Strickland.* The state-court's decision is "a run-of-the-mill state-court decision applying the correct legal rule from [*Strickland* ] to the facts of a prisoner's case" and, therefore, it "does not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams,* 529 U.S. at 406, 120 S.Ct. 1495.

■ Moore has also failed to satisfy his burden of demonstrating that the decision of the Tennessee Court of Criminal Appeals was an unreasonable application of *Strickland* or that it was based on an objectively unreasonable determination of the facts. At the beginning of the trial, the jury was instructed that "the defendant is presumed innocent until proven guilty by clear, credible and competent proof beyond a reasonable doubt and to a moral certainty." (Trial Tr. 155:20–23, ECF No. 16–2, PageID 1381.) Before the case was submitted to the jury, the trial judge gave the following instructions on the presumption of innocence and reasonable doubt:

You are to enter upon this investigation with the presumption that the defendant is not guilty of any crime, and this presumption stands as a witness for him until it is rebutted and overturned by competent and credible proof. It is, therefore, incumbent upon the state before they can—before you can convict the defendant to establish to your satisfaction beyond a reasonable doubt that the crime charged in the indictment has been committed, and that the same was committed within the County of Shelby and the State of Tennessee before the finding of this indictment, and that the defendant at the bar committed [the] crime in such manner that would make him guilty under the law heretofore defined and explained to you.

. . . .

Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability, after such investigation, to let the mind [sic] easy upon the certainty of guilt. Reasonable doubt does not mean a doubt that may arise from possibility. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge but moral certainty is required,[ ] and this certainty is required as to every proposition of proof requisite to constitute the offense.

(Charge of Law Tr. 7:17–8:5, 8:8–17, ECF No. 9–22, at PageID 1045–46.) The jury was also instructed,

If evidence is introduced supporting self-defense, the burden is on the state to prove beyond a reasonable doubt that the defendant did not act in self-defense. If from all the facts and circumstances

you find the defendant acted in self-defense or if you have a reasonable doubt as to whether he acted in self-defense, you must find the defendant not guilty.

(Charge of Law Tr. 17:22–18:3, *id.*, at PageID 1055–56.)

The Tennessee Court of Criminal Appeals held that "[t]he trial court's instruction was a correct statement of law regarding the presumption of innocence and reasonable doubt," and that "[i]t is clear from the record that the jury instruction read in its entirety did not mislead the jury as to the state's burden of proving the petitioner's guilt beyond a reasonable doubt." *Moore v. State*, 2009 WL 1424186, at *8. Any claim by Moore that the Tennessee Court of Criminal Appeals misapplied state law is not cognizable in a § 2254 petition. *See Estelle*, 502 U.S. at 67–68, 112 S.Ct. 475.

Because the jury charge was a correct statement of the law on the burden of proof and reasonable doubt, the conclusion of the Tennessee Court of Criminal Appeals that defense counsel was not ineffective in failing to request additional instruction on these matters is not objectively unreasonable. Moore has also failed to address the conclusion of the Tennessee Court of Criminal Appeals that there has been no showing that, if only the jury instruction he prefers had been given, there is a reasonable probability that the outcome of the trial would have been different.

The Court finds that the third claim is without merit. The third claim is hereby DISMISSED.

### D. Trial Counsel's Alleged Failure to Request Jury Instructions on Lesser–Included Offenses (Claim 4)

Moore argues that trial counsel rendered ineffective assistance by failing to request jury instructions on lesser-included offenses. (ECF No. 1–3 at 12; ECF No. 1–1 at 14–15.) Specifically, Moore contends that the jury should have been instructed on the elements of negligent homicide and reckless homicide. (ECF No. 1–at 14–15.) The factual basis for this claim is as follows:

During trial, Counsel put on proof that there were two gunshots that day. The Petitioner testified at trial that he was involved in an altercation with the victim after the victim had stolen some property from Petitioner's home. The Petitioner testified that when he turned to leave the scene, he heard a gunshot and instinctively turned and shot, striking the victim in the chest.

Certainly, an argument could have been made, that under these facts, this fails to meet the requirements of premeditated first degree murder. If properly instructed, an argument for reckless homicide or negligent homicide verdict is appropriate. However, without the appropriate jury instructions consideration by the jury is impossible.

Initially, counsel did not want any lesser-included jury instructions for the trial as part of his strategy. However, lesser-included offense instructions were a part of the jury instructions, and since they were a part of the charge counsel admitted that as part of the deliberation process. If counsel had followed this course, there is a reasonable probability the Petitioner would have received relief in this matter.

(*Id.* (citations omitted).)

Moore raised this claim in the second post-conviction proceeding, where the following evidence on this claim was offered:

The following pertinent evidence was presented at the 2007 hearings. The petitioner complained that his first appointed counsel did not make an effort

to include lesser-included offenses in the jury instruction, instead, counsel wanted to pursue theories of self-defense or heat of passion. The petitioner further asserted that his second appointed counsel, who ultimately represented him at trial and on direct appeal, did not request lesser-included offenses because the defense strategy was "all or nothing." The petitioner recalled that he was initially in agreement with the "all or nothing" defense strategy. However, the state requested that the jury be instructed on lesser-included offenses, and the petitioner agreed to the additional instructions. As a result, the jury received instructions on second degree murder and voluntary manslaughter. The petitioner stated that there was no discussion on instructing the jury on the offenses of reckless homicide or criminally negligent homicide, and he did not ask for instructions on offenses beyond voluntary manslaughter because he was not well-versed in the law at the time of his trial.

. . . .

Counsel testified that he discussed lesser-included offenses with the petitioner. Counsel said that the defense believed at the time of trial that the proof did not support a conviction for first degree murder; and therefore, the strategy was to go for an "all or nothing" verdict. However, the state objected and the trial court added instructions on second degree murder and voluntary manslaughter. Counsel noted that the case of *State v. Burns* had not been decided at the time of the petitioner's trial.

*Moore v. State,* 2009 WL 1424186, at *4, *6.

The Tennessee Court of Criminal Appeals stated its reasons for denying relief on this claim:

The petitioner next asserts that counsel was ineffective for failing to request a proper jury instruction for the offenses of reckless homicide and criminally negligent homicide or to allege this error in the motion for new trial, or pursue the issue on appeal. The petitioner concedes that the law as set forth in *State v. Burns* does not apply to his trial and direct appeal.

Addressing the petitioner's complaint, the post-conviction court made the following findings:

At the hearing for the Petition for Post–Conviction Relief, Counsel testified that a jury instruction regarding the lesser included offenses of reckless or negligent homicide would not support [the petitioner's] self-defense argument. Petitioner has not established that Counsel's failure to request jury instruction on the lesser included offenses was not sound trial strategy within the wide range of reasonable professional assistance.

Upon review, we initially note that the issue of lesser-included offenses is controlled by the prevailing law at the time of trial. At the time of the petitioner's trial, it was the [ ] duty of all judges [ ] to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so. In *State v. Page,* our supreme court observed that:

Under this prior version of section 40–18–110, a defendant was not required to request a lesser-included instruction to assign as error the trial court's failure to give such instruction. Therefore, all a defendant need do to assign error to a trial court's failure to instruct on a lesser-included offense was to raise that issue on appeal.

Because the trial court had a mandatory duty to instruct the jury regardless

of a request to do so, this court has consistently held that trial counsel was not ineffective for failing to request an instruction on a particular lesser included offense.

Also, as found by the post-conviction court, the petitioner's trial counsel testified that lesser-included instructions were not requested by the defense for tactical reasons. Counsel explained that the petitioner was adamant that he shot the victim in self-defense. Therefore, the strategy was to argue self-defense and go for an "all or nothing" verdict. The petitioner's case was tried and appealed prior to the issuance of the *Burns* decision. It is not sound policy for this court to second-guess counsel through the distortions of hindsight. Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief. Accordingly, we conclude that the petitioner failed to demonstrate deficient performance of counsel as announced in *Strickland.*

Likewise, the petitioner has not demonstrated deficiency regarding counsel's failure to raise as error on appeal the lack of jury instruction on reckless homicide and criminally negligent homicide. Again, counsel is not required to raise every conceivable issue on appeal and is afforded considerable deference in determining appellate strategy. The petitioner's direct appeal reflects that counsel's primary challenge was to the sufficiency of the convicting evidence. Undoubtably, this issue was raised in light of trial strategy and the petitioner's testimony regarding self-defense. Moreover, to obtain relief on the basis of ineffective assistance of counsel, the petitioner must also demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The evidence at trial clearly reflects that the petitioner sought out the victim and threatened repeatedly to kill the victim while brandishing a gun. Thereafter, the petitioner confronted the victim and intentionally shot him in the back at point blank range. Based on this evidence, the jury found the petitioner guilty of first degree murder despite being instructed on second degree murder and voluntary manslaughter. Consequently, the petitioner has not proven that (1) counsel's conduct fell outside the wide range of reasonable professional conduct for attorneys at the time of appeal; or (2) a reasonable probability that the outcome of the proceedings would have been different had the jury been instructed on reckless homicide and criminally negligent homicide. The petitioner is not entitled to relief.

*Id.* at *8–9 (first alteration in original) (citations omitted) (internal quotation marks omitted).

Respondent argues that the decision of the Tennessee Court of Criminal Appeals on this issue was a reasonable application of *Strickland* and was based upon a reasonable determination of the facts. (ECF No. 10 at 31–35.) Moore was charged with premeditated first-degree murder, and the jury was also instructed on the elements of second-degree murder and voluntary manslaughter. (Charge of Law Tr. 3:24–7:14, ECF No. 9–22, at PageID 1041–45.) Second-degree murder is the knowing killing of another, and voluntary manslaughter is the knowing killing of another resulting from a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner. (Charge of Law Tr. 5:17–7:14, *id.,* at PageID 1043–45.)

Moore contends that trial counsel should have requested jury instructions on reckless homicide and negligent homicide. Under Tennessee law, "[c]riminally negligent conduct which results in death constitutes

criminally negligent homicide." Tenn. Code Ann. § 39–13–212(a) (1992). That offense was first enacted in Tennessee in 1989. According to the Tennessee Sentencing Commission,

> Criminally negligent homicide is an offense which is new to Tennessee. It replaces involuntary manslaughter. The mens rea for criminally negligent homicide is defined in § 39–11–302(d), which makes clear that simple negligence, as defined in civil law, is insufficient for criminal liability. Rather, criminal negligence requires "a substantial and unjustifiable risk" and the risk must be of such a nature and degree that "the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the person's standpoint."

Tenn. Code Ann. § 39–13–212 cmt. Although not discussed by the Tennessee Court of Criminal Appeals or the parties, the offense of reckless homicide was first enacted in Tennessee in 1993 and, therefore, could not be applied to a homicide committed in 1992. *See* Tenn. Code Ann. § 39–13–215 (1993).

At the second post-conviction hearing, trial counsel explained why he did not request lesser-included offense instructions. According to Lewis,

> I didn't think the proof was available to get a conviction on murder first degree and I did not want any lesser included offenses charged so that the jury could have a compromised [sic] verdict. I simply asked for an all or nothing and the State objected to that. And we actually argued that in front of Judge Bennett. And over my objection Judge Bennett charged some lesser included offenses.

(06/07/07 Tr. 82:11–18, ECF No. 9–20, at PageID 947; *see also* 09/14/07 Tr. 14:20–15:12, ECF No. 9–21, at PageID 973–74.)

Lewis also stated, "I did not want to participate in suggesting other [lesser-included offenses] because I didn't want to waive the fact on appeal that I was relying on an all or nothing charge." (06/07/07 Tr. 83:5–7, ECF No. 9–20, at PageID 948.) According to Lewis, Moore never suggested that the appropriate charge was voluntary manslaughter: "It was never discussed. Mr. Moore was adamant that it was self-defense. He turned and returned fire was his statement, that he had been shot at." (06/07/07 Tr. 84:16–19, *id.*, at PageID 947.)

On redirect, Lewis testified that he discussed the possible lesser-included offenses thoroughly with Moore before the trial. (09/14/07 Tr. 49:1–6, ECF No. 9–21, at PageID 1008.) Counsel emphasized that he made a conscious choice to de-emphasize lesser-included offenses:

> It was a trial tactic so that the jury had to decide it was grievous under murder one or simply some other charge. And Mr. Moore and I discussed the possibility of a compromised verdict where they thought something had happened but it just hadn't been proved and he did not want to do that since he felt it was self-defense and he didn't want, and I concurred with him, he did not want any lesser included charges because that would allow the jury to convict him of something that he was not originally charged with.

(09/14/07 Tr. 49:10–19, *id.*, at PageID 1008.) Counsel presented a self-defense theory in the case. (09/14/07 Tr. 49:20–22, *id.*, at PageID 1008.)

 The decision not to seek jury instructions on additional offenses was an informed strategic decision that is "virtually unchallengeable." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. Lewis was familiar with the lesser-included offenses to first-degree murder but decided not to request instructions on additional lesser-included

offenses to avoid a compromise verdict. Trial counsel argued persuasively in his summation that the evidence was insufficient to establish premeditation despite the testimony of three members of the victim's family that Moore said he was going to kill the victim if he did not return the gun he had stolen. (Trial Tr. 471:19–476:20, ECF No. 16–1, at PageID 1329–34.) Counsel also made an effective argument from the evidence presented that Moore had reason to believe that the victim was armed, that he heard a shot and believed the victim had shot at him, and that he responded. (Trial Tr. 482:22–488:9, *id.*, at PageID 1340–46.) Although that strategy was not successful, trial counsel's decision to pursue it was not objectively unreasonable.

▮▮▮ Moore also has not established prejudice. The jury had the option of convicting Moore of second-degree murder and voluntary manslaughter, yet the jury chose to convict him of the highest offense. That verdict necessarily means that the jury believed that the shooting was premeditated. Moore has presented no reasoned argument that, had the jury been instructed on criminally negligent homicide, there is a reasonable probability he would have been convicted of that offense instead of first-degree murder.[6]

The Court finds that the fourth claim is without merit. The fourth claim is hereby DISMISSED.

### E. Trial Counsel's Failure to Object to the Mannequin (Claim 5)

Moore argues that his trial counsel rendered ineffective assistance by failing to

object to the presence in the courtroom of a mannequin with a bullet hole in its back. (ECF No. 1–4 at 15–16.) Moore raised this issue in the second post-conviction proceeding, and the Tennessee Court of Criminal Appeals rejected it on the merits, stating as follows:

> The petitioner next alleges that trial counsel failed to provide effective assistance of counsel by not objecting to the presence of a mannequin in the courtroom. The petitioner claims that the mannequin had a hole in its back and its presence prejudiced his trial.
>
> Upon review, we conclude that the petitioner has failed to prove his allegation of fact by clear and convincing evidence. The petitioner alleged that he observed a mannequin in the courtroom during opening statements of his trial. However, contrary to the petitioner's allegation, counsel stated that he did not recall seeing a mannequin in the courtroom. Also, the petitioner has failed to include the transcript of the trial in the appellate record, and there is nothing in the available record indicating that a mannequin was present in the courtroom. Additionally, the petitioner does not provide any evidence that the jury saw the mannequin or that it inflamed the jury so as to prejudice his trial. Accordingly, the petitioner has failed to establish his claim in this regard. The issue is without merit[.]

*Moore v. State*, 2009 WL 1424186, at *10.

This issue is arguably barred by procedural default due to post-conviction counsel's failure to include the trial transcript

---

**6.** Moore also overlooks the statement of the Tennessee Court of Criminal Appeals that, at the time of his trial, judges had a mandatory duty to instruct the jury on lesser-included offenses and, therefore, that the issue could be raised on appeal even if no request was made at trial and the issue was not included in a motion for a new trial. *Moore v. State*, 2009 WL 1424186, at *8–9. Therefore, Moore could not have been prejudiced by his attorney's failure to request additional instructions. Notably, the instant § 2254 Petition does not allege that appellate counsel was ineffective for failing to raise this issue on direct review.

in the record on direct appeal. *See* Tenn. R. App. P. 24(b). Respondent has not argued that Petitioner's federal habeas claims are barred by procedural default due to his failure properly to prepare the record before the Tennessee Court of Criminal Appeals (*see* ECF No. 10 at 35–36), and the Court declines to raise this affirmative defense sua sponte, *see supra* p. 839.

Respondent argues that the decision of the Tennessee Court of Criminal Appeals was not contrary to, or an unreasonable application of, *Strickland,* and it was not based on an unreasonable factual determination. (*Id.*) This is a run-of-the-mill decision applying the correct legal rule to the facts of a prisoner's case and, therefore, does not come within the "contrary to" clause, *see Williams,* 529 U.S. at 406, 120 S.Ct. 1495.

■ Moore does not discuss whether the decision was an unreasonable application of *Strickland* or whether it was based on an objectively unreasonable factual determination. Although trial counsel did not recall the mannequin at the post-conviction hearing, the trial transcript reflects that the medical examiner used a mannequin during his testimony. The medical examiner testified that "[t]he gunshot wound was to the upper part of the back on the left side, just to the left of the spine." (Trial Tr. 178:18–19, ECF No. 16–2, at PageID 1404.) The medical examiner was directed to mark on the mannequin the location of the wound and, with the trial court's permission, he used the mannequin to demonstrate the path taken by the bullet inside the victim's body. (Trial Tr. 178:20–180:3, *id.,* at PageID 1404–06.) The mannequin was marked as Exhibit 2 "with permission to substitute a photograph in the record later on." (Trial Tr. 180:8–14, *id.,* at PageID 1406.) Thus, any assumption on the part of the state court

that there was no mannequin is factually inaccurate.

Notwithstanding this inaccuracy, Moore has failed to establish that he is entitled to relief on this issue. Moore does not address the finding of the Tennessee Court of Criminal Appeals that he failed to "provide any evidence that ... [the mannequin] inflamed the jury so as to prejudice his trial." *Moore v. State,* 2009 WL 1424186, at *10. It is common practice in murder cases for the medical examiner to use demonstrative evidence to illustrate the victim's injuries. Some types of demonstrative evidence, particularly photographs of wounds on the victim's body, present a far greater risk of undue prejudice than a mannequin. Moore's Petition assumes, incorrectly, that demonstrative evidence is always prejudicial, and he makes no argument that the specific type of visual aid used, or the manner in which it was presented, was particularly likely to inflame the jury.

The Court finds that Moore has not established deficient performance or prejudice, and, thus, the fifth claim is without merit. Moore's fifth claim is hereby DISMISSED.

## F. The Alleged Failures to Comply with the Mandate of the Tennessee Court of Criminal Appeals (Claims 6 & 7)

Moore argues that the trial court failed to follow the mandate of the Tennessee Court of Criminal Appeals. (ECF No. 1–4 at 17–21.) Moore further asserts that post-conviction counsel failed to follow the Tennessee Court of Criminal Appeals' mandate. (*Id.* at 21–24.) These issues, as presented, appear to be a summary of Moore's complaints about the conduct of post-conviction proceedings, including inordinate delay, the failure of the State to respond to each issue that was raised,

post-conviction counsel's filing of a notice of appeal before Moore had a chance to submit a pro se motion for reconsideration, and alleged bias by the post-conviction court and its failure to provide a full and fair post-conviction hearing. (*Id.* at 17–21.) Moore also complains that post-conviction counsel on remand failed to take any action for five years, failed to obtain the trial transcripts so they could be submitted with the brief on the second post-conviction appeal, and failed adequately to present the intervening-cause defense. (*Id.* at 21–24.)

 Respondent contends that these issues are not cognizable in a § 2254 petition. (ECF No. 10 at 36.) Respondent's argument is well-taken. Any failure by the post-conviction court or post-conviction counsel to comply with the mandate of the Tennessee Court of Criminal Appeals arises under state law and is not properly raised in a federal habeas petition. *See Estelle*, 502 U.S. at 67, 112 S.Ct. 475. Moreover, the law is clear that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i).

Moreover, as Respondent has also noted (ECF No. 10 at 36–37), this claim was not exhausted in state court and, because no further mechanism exists for pursuing these issues, they are barred by procedural default. *See supra* pp. 835–36.[7]

The Court finds that the sixth and seventh issues are without merit. Moore's sixth and seventh claims are hereby DISMISSED.

Because every claim asserted by Petitioner is without merit, the Court DENIES the Petition pursuant to 28 U.S.C. § 2254. The Petition is DISMISSED WITH PREJUDICE.

## V. APPEAL ISSUES

There is no "absolute entitlement to appeal a district court's denial of [a § 2254] petition." *Miller–El v. Cockrell*, 537 U.S. at 335, 123 S.Ct. 1029; *see Bradley v. Birkett*, 156 Fed.Appx. 771, 772 (6th Cir. 2005). The Court must issue or deny a certificate of appealability when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R.App. P. 22(b)(1).

A certificate of appealability may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the certificate of appealability must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter,

---

**7.** In the first post-conviction appeal, the Tennessee Court of Criminal Appeals concluded that,

> Based upon our careful examination of the record, we remand to the trial court for appointment of different counsel, who will investigate the intervening cause defense and may file an amended petition alleging any other grounds for relief that he or she deems appropriate for the trial court's consideration. The trial court shall conduct another post-conviction hearing.

*Moore v. State*, 2001 WL 792612, at *5. Nothing in Moore's presentation of these issues persuades the Court that there has been any violation of this instruction by the post-conviction court or post-conviction counsel. New counsel was appointed, some investigation of the intervening-cause defense was undertaken, an amended petition was filed that raised new claims, and another post-conviction hearing was held.

agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. at 336, 123 S.Ct. 1029; *see also Henley v. Bell,* 308 Fed.Appx. 989, 990 (6th Cir.2009) (per curiam). A certificate of appealability does not require a showing that the appeal will succeed. *See Miller–El v. Cockrell,* 537 U.S. at 337, 123 S.Ct. 1029; *Caldwell v. Lewis,* 414 Fed.Appx. 809, 814–15 (6th Cir. 2011). Courts should not issue a certificate of appealability as a matter of course. *Bradley,* 156 Fed.Appx. at 773.

In this case, there can be no question that Petitioner's claims are without merit for the reasons previously stated. Because any appeal by Petitioner on the issues raised in this Petition does not deserve attention, the Court DENIES a certificate of appealability.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. *See* Fed. R.App. P. 24(a)(4)-(5). In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal in forma pauperis is DENIED.[8]

---

8. If Petitioner files a notice of appeal, he must pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of the date of entry of this Order. *See* Fed. R. App. P. 24(a)(5).

## VI. CONCLUSION

For the foregoing reasons, Moore's Petition is DENIED WITH PREJUDICE.